## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PLAINTIFF JANE DOE, a minor individual, and )
)
PLAINTIFF ANGELA HARRISON, )
Jane Doe's mother, as next friend of JANE DOE, )
)
      Plaintiffs, )
)
v. )    **Case No.  2:16-cv-02801**
)
USD 237, the Smith Center School District, and )
)
BROCK HUTCHINSON, an individual, )
)
      Defendants. )

## COMPLAINT

1. Plaintiffs bring this suit to seek compensation and redress for harms suffered as a result of Coach Brock Hutchinson's conduct and the USD 237 administrators and employees' ratification and retaliation that followed, in violation of 42 U.S.C § 1983, the Fourth and Fourteenth Amendments, Title IX of the Education Amendments Act of 1972, as well as Kansas common law claims to be asserted under the Kansas Tort Claims Act, K.S.A. § 75-6103.

2. This court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 and §1367.

### Parties

3. Defendant USD 237 is a Kansas school district comprised of about 380 students located in Smith Center, Kansas, a town of about 1,600 people. Defendant USD 237 may be served at 216 S. Jefferson Street, Smith Center, KS 66967.

4. Defendant USD 237 acts through its employees and agents, all of whom were acting within their scope of employment and/or agency during the events described herein.

1

5. Defendant Brock Hutchinson "Hutchinson" is a teacher and coach at Defendant USD 237, and he may be served at 608 W. Court Street, Smith Center, KS 66967.

6. At all times material, Defendant Hutchinson was acting within his scope and employment as a teacher and coach of Defendant USD 237 and under color of law.

7. Plaintiff Jane Doe is currently a minor student and a resident of Kansas.

8. Plaintiff Angela Harrison is Jane Doe's mother and brings this suit as Jane Doe's next friend.

## Background Allegations

9. At Defendant USD 237 ("the District"), football coaches are revered, not just in school, but throughout the city and region, and the weekly high school football game is the fiber of the region's social fabric.

10. The District is the largest employer in the town; and many of the teachers and coaches' family members are on the football team.

11. The District football program has been exceptionally successful, achieving national fame and featured in Sports Illustrated and was the subject of a book by a New York Times writer entitled *Our Boys: A Perfect Season on the Plains with the Smith Center Redmen*.

12. The book chronicles the 2008 team, which was then on the nation's longest winning streak under the leadership of its famed coach of 30 years.

13. Featured prominently in the book is Defendant Coach Brock Hutchinson, who had been working as an assistant coach, and whose own father had also coached football at Smith Center for the previous 30 years.

14. But in 2008, before the book even came out, the District already had actual knowledge that Coach Hutchinson had reportedly engaged in an inappropriate romantic relationship with an underage, female Smith Center high school student.

15. As early as 2008, it was common knowledge among District employees that Coach Hutchinson routinely engaged in sexualized conversation with and involving District students under his supervision and had reportedly engaged in an inappropriate relationship with a female student.

16. In 2008, a Smith Center School District coach reported her concerns about Coach Hutchinson's involvement with the underage, female Smith Center high school student to a District administrator and athletic director.

17. Despite this actual knowledge, in 2008, the District deliberately chose to do nothing about Coach Hutchinson's conduct and continued to employ him as a coach and teacher of high school students.

18. Over the next six years, Coach Hutchinson continued to routinely and openly speak to and about his female students in sexualized terms. For instance, in approximately 2014, he requested one of his female students in gym class to "twerk" while doing a handstand.

19. In the Fall of 2013, a female student named Jane Doe had moved to town and was attending Smith Center high school.

20. She had been dating a Smith Center football player who also wrestled for Coach Hutchinson.

21. Starting in late December of 2014, Coach Hutchinson began inquiring of Jane Doe's boyfriend in the presence of other District students what kind of sexual acts Jane Doe had performed.

22. Then, in late December of 2014, during a gym class overseen by Coach Hutchinson, a ball rolled between Jane Doe's legs, prompting Coach Hutchinson to state to the entire class words to the effect of: "Don't worry about [Jane Doe], she's used to having balls between her legs."

23. Coach Hutchinson continued to make inquiries about Jane Doe's sexual habits and also started calling her "dumb" in class, discouraging her from attending athletic events, glaring at her in public and then, once, sat on her feet in an effort to get her to leave a wrestling match.

24. Jane Doe confided in two District teachers regarding Coach Hutchinson's actions, and both responded to her by stating words to the effect of: "That's just Brock being Brock."

25. In January of 2015, Jane Doe told Angela Harrison what had been happening.

26. Angela Harrison then directly contacted the District superintendent and the high school principal and Coach Hutchinson and specifically requested them to end Hutchinson's harassment of her daughter, keep the matter confidential, and not engage in any retaliation.

27. Thereafter, Coach Hutchinson continued, as he previously had, in making sexual comments in front of supervisors and students, including Jane Doe, about other female students; he spoke to students about his own sexual acts; and he made sexually suggestive comments to female students.

28. For example, Coach Hutchinson boasted at school about how many times he had talked female students into removing their shirts and engaging in activities only in their sports bras.

29. In January of 2016, Jane Doe's car tires were slashed in the school parking lot. The District claimed it could not determine who committed the slashing despite having videotaped footage of who entered and exited the parking lot.

30. In March of 2016, while in Coach Hutchinson's classroom, a male student made a crude sexual comment to Jane Doe, which prompted Hutchinson to state words to the effect of "Don't joke with [Jane Doe] like that. You're going to have her mom riding my ass again."

31. At approximately the same time, Hutchinson approached the father of Jane Doe's boyfriend and urged him to keep his son away from her because she was a "troublemaker."

32. Then in April of 2016, Mike Rogers, a District football and track coach and Hutchinson's colleague, informed Jane Doe that she would not be allowed to travel with the team to a track meet, ostensibly because she would only compete in one event. However, Rogers allowed numerous other students to attend the track meet and participate in only one event.

33. After talking to Rogers, Angela Harrison reported to the District school board that she believed the track coach was excluding Jane Doe from participation because of his loyalty to Coach Hutchinson and Jane Doe's prior reports concerning his behavior.

34. In the week that followed the District high school principal, Greg Koelsch, called Angela Harrison and told her that Coach Hutchinson avoided interactions with Jane Doe so that "nothing could be misconstrued."  Koelsch also separately met with Jane Doe and asked her why her mother was making reports concerning Hutchinson.

35. In the week that followed, Coach Hutchinson broke down in tears in front of his students and told them he was going to be fired because of an accusation.

36. A student in the Smith Center lunchroom began chanting "move back to Valley Heights" in reference to Jane Doe, who had moved to Smith Center from that town.

37. At the same time, Koelsch began contacting witnesses in a third-party investigation into Jane Doe's complaint, informing the witnesses that they needed to be interviewed because Harrison had made untruthful allegations about Hutchinson.

38. In June of 2016, the District decided to retain Coach Hutchinson in its employment.

39. The next month, during the summer of 2016, Coach Hutchinson stared down Jane Doe while she moved from aisle to aisle at a Dollar General store in Smith Center.

40. At the same time, District board members were not allowing their daughters to play on the same teams as Jane Doe in summer leagues, and Jane Doe was being bullied by District students and former students.

41. Jane Doe's mother reported the activity to the District, which responded that it had no control over Hutchinson during the summer months and ignored her report of bullying.

42. In September of 2016, the District's school counselor Kelli Schmidt and two District volleyball coaches and Coach Hutchinson's daughter met with Jane Doe at school after one of the volleyball coaches pulled her out of class.

43. Over the course of two hours, the District school counselor Schmidt repeatedly told Plaintiff Jane Doe to apologize to Coach Hutchinson's daughter  for the misery her family had caused Hutchinson's family the prior summer; that her mother should stop contacting people about Hutchinson; that Hutchinson "deserved a second chance" and she was glad he was getting one; that Jane Doe was suffering due to her mother's conduct; that her mother was litigious and blew everything out of proportion; and that District teachers don't remember Jane Doe's reports about Hutchinson's behavior.

44. During the two hour session, the District counselor repeatedly demanded that Jane Doe "admit" that she was just being "dramatic" about Coach Hutchinson's conduct and warned Jane Doe that Angela Harrison was not acting in her best interest.

45. The volleyball coaches then began playing Jane Doe less in volleyball games than she had previously played, knowing that Jane Doe had the ability and interest in obtaining a college scholarship for volleyball.

46. The volleyball coaches and the track coach acted in concert with Coach Hutchinson to deprive Jane Doe access to school activities.

47. District employees and board members, including the superintendent, the athletic director and the principal, with actual knowledge of a credible report of Coach Hutchison having an inappropriate relationship with an underage female student, together with its actual knowledge of Hutchinson's ongoing, active creation of a hostile educational environment charged with sexual harassment, placed the Defendant District on notice that Hutchinson presented a specific threat to similarly sexually harass Plaintiff Jane Doe.

48. District employees and board members, including the superintendent, the athletic director and the principal, with the authority and knowledge sufficient to stop Coach Hutchinson from creating a hostile educational environment and sexually harassing female students deliberately, decided to take no action and instead, endorsed Hutchinson's conduct and further acted directly to retaliate against Jane Doe and her family

49. District employees and board members, including the superintendent, the athletic director and the principal, with the authority and knowledge sufficient to stop the District volleyball coaches, the track coach and the District counselor from creating a hostile educational environment and depriving Jane Doe of educational opportunities deliberately decided to take no action, and instead, endorsed the District employees' conduct and further acted to retaliate and intimidate Jane Doe.

50. The District had actual knowledge that Coach Hutchinson was harassing Jane Doe, and then seeking to intimidate her, and the District deliberately did nothing about it.

51. There was no valid reason for the District to act against Jane Doe as it did; the District simply valued its football coach and program over the rights of Jane Doe as a student.

52. After Jane Doe and Angela Harrison made reports concerning Coach Hutchinson, the District's employees deliberately retaliated against Jane Doe by excluding her from sporting events, taking no action to stop students from harassing and bullying her, and by repeatedly cornering the minor female at school, without a parent present, to intimidate her.

53. In October of 2016, Jane Doe had no choice but to withdraw from the District and transfer to an out-of-town high school.

54. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

55. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

56. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

57. On October 12, 2016, Plaintiff Jane Doe caused to be sent a Notice of Claims pursuant K.S.A. §12-105b(d), the Kansas Tort Claims Act, to the Defendant District, placing it on notice of causes of action Plaintiff may assert against it, including Invasion of Privacy, Negligent Supervision of Employees, Negligent Hiring of Employees, Negligent Retention of Employees, Respondeat Superior/Vicarious Liability for Employee Conduct, Negligent Infliction of Emotional Distress and Negligent Supervision of Children.

8

58. In response, Defendant District, instead of conducting a meaningful investigation, issued a demand to take the statement of Jane Doe, a female minor, "administered under oath before a duly qualified reporter," even though District officials had already interrogated her on at least two prior occasions.

59. If the District does not use its opportunity to make Jane Doe whole within 120 days of her Kansas Tort Claims Act claim, Plaintiffs will seek to amend this complaint to add those claims to this suit.

## COUNT I: *SIMPSON* TITLE IX HOSTILE EDUCATIONAL ENVIRONMENT

60. Plaintiffs hereby incorporate the foregoing pleaded facts as if fully restated herein.

61. In *Simpson v. University of Colorado, Boulder*, 500 F.3d 1170 (10th Cir. 2007), the Tenth Circuit stated that a school could be held liable under Title IX if it is a federal funding recipient and possesses an "official policy" of "deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient" or if a school district "sanctioned, supported, even funded a program … that, without proper control" would result in sexual harassment.

62. Defendant District is a recipient of federal funds.

63. Defendant District possessed an official policy, as evinced by the conduct of policy-making officials of permitting Coach Hutchinson to make sexual comments about female students at school and retaining him in the District's employment, and responding to complaints about this conduct by dismissing it as "Brock being Brock."

64. In a related policy, Defendant District officially displayed deliberate indifference to training Defendant Hutchinson and his fellow District employees in their duty to do everything

in their power to stop sexual harassment from occurring and to avoid retaliating against a student who reports harassment.

65. These two policies made Plaintiff Jane Doe more vulnerable to the sexual harassment and retaliation by Defendant Hutchinson that did in fact occur.

66. District employees and board members with authority to protect Jane Doe had actual knowledge that these policies were making Jane Doe more susceptible to harassment.

67. Though unnecessary under *Simpson,* these same District employees and board members also had actual knowledge that Defendant Hutchinson had sexually harassed female students previously, as described in preceding paragraphs.

68. Though unnecessary under *Simpson*, these same District employees and board members also had actual knowledge that Defendant Hutchinson posed a serious, specific threat to Jane Doe following Jane Doe and Angela Harrison's reports of harassment.

69. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

70. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

71. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

## COUNT II: *ESCUE* TITLE IX HOSTILE EDUCATIONAL ENVIRONMENT

72. Plaintiffs hereby incorporate the foregoing pleaded facts as if fully restated herein.

73. In *Escue v. N. Okla. Coll*., 450 F.3d 1146 (10th Cir. 2006), the Tenth Circuit articulated three elements for a private cause of action under Title IX: first, the district remained

deliberately indifferent to acts of harassment of which it has actual knowledge; second, the harassment was reported to an appropriate person with the authority to take corrective action; and third, the harassment deprived the victim of educational benefits or opportunities.

74. The District is a recipient of federal funding.

75. The District remained deliberately indifferent to the sexually charged hostile educational environment Defendant Hutchinson continued to create even after it had actual knowledge that he had sexually harassed Plaintiff Jane Doe.

76. Plaintiffs reported Defendant Hutchinson's conduct and the conduct of his fellow coaches multiple times to the District principal, superintendent, athletic director and school board members – all of whom had the authority and means to take corrective action.

77. Defendant Hutchinson's harassment of Plaintiff deprived her of educational opportunities, in that his actual, ongoing sexual commentary created a pervasive hostile educational environment for Plaintiff Jane Doe, who was not able to focus on normal educational opportunities while District employees beleaguered her and Defendant Hutchinson continued to be enabled to create a sexually hostile educational environment.

78. Defendant Hutchinson's colleagues, acting in concert with Defendant Hutchinson, denied Plaintiff Jane Doe opportunities to participate fully in the District's sport programs.

79. The District's deliberate indifference is evinced by:

a.      The District's deliberate decision to continue to employ, endorse and promote Coach Hutchinson, and at no time take action to limit his interactions with minors, despite actual knowledge of a credible report of an inappropriate romantic relationship with a minor student.

b.      The District's deliberate decision to permit Coach Hutchinson to openly make sexual comments about female students at school, despite actual knowledge that he was doing so and actual knowledge that it had been reported as problematic.

c.      The District's deliberate decision to interrogate the minor Plaintiff Jane Doe at school for two hours in an attempt to pressure her into apologizing and forcing her to tell her mother to stop reporting the harassment.

d.      The District's affirmative decision to do nothing at all regarding Plaintiffs' report that Coach Hutchinson was stalking Plaintiff Jane Doe at the Dollar General store in the summer.

e.      The District's affirmative decision to allow its coaches to continue to exclude Plaintiff Jane Doe from athletic activities.

f.      The District's administrators' affirmative attempts to frustrate a third-party investigation into Coach Hutchinson's conduct.

g.      The District's decision to request a recorded statement under oath from the minor Jane Doe before investigating her allegations.

80. The District's affirmative actions and inactions made Jane Doe more susceptible to sexual harassment and retaliation both before and after her report.

81. The District's conduct was in no way reasonably designed to help Jane Doe or stop the hostile educational environment.

82. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

83. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

84. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

## COUNT III: TITLE IX RETALIATION

85. Plaintiffs hereby incorporate the foregoing pleaded facts as if fully restated herein.

86. The Supreme Court recognized a cause of action for Title IX retaliation in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005).

87. In the Tenth Circuit, the courts apply the Title VII framework to Title IX retaliation claims. *Gossett v. Okla. ex rel. Bd. Of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001).

88. The District is a recipient of federal funds.

89. Plaintiffs engaged in protected activity when they reported the harassment of Jane Doe, her exclusion from educational programs, the District's frustration of an investigation into Coach Hutchinson, and the District's subsequent attempts to intimidate and retaliate against Plaintiffs.

90. Plaintiff Jane Doe suffered a materially adverse action when she:

    a.    Was denied access to educational opportunities in the form of participation in extracurricular activities.

    b.    Was urged to take different classes.

    c.    Missed school due to the anxiety, depression and stress caused by the District's conduct.

       d.      Was stalked in the summer months by Coach Hutchinson.

       e.      Was subjected to intimidation and interrogation.

       f.      Was forced to withdraw from the District.

91. There is a causal connection between the protected activity and the materially adverse actions, as evinced by the following pleaded facts:

       a.      The same District administrators who received the protected reports engaged in activity aimed at frustrating the investigation into those reports, permitted Coach Hutchinson to continue making sexual comments about female students, sought to intimidate Plaintiffs with two-hour interrogations and forced apologies, and permitted District coaches to exclude Plaintiff Jane Doe from extracurricular activities.

       b.      The retaliatory acts came immediately after the protected activity.

       c.      The retaliatory acts occurred as part of a clear chain of cause and effect stemming from the protected activity.

       d.      The retaliatory acts were in some cases designed to thwart the efficacy of Plaintiffs' protected activities.

       e.      The same District administrators who had actual knowledge of Plaintiffs' protected activity deliberately permitted Coach Hutchinson to continue creating a hostile educational environment.

92. The District's affirmative actions and inactions made Jane Doe more susceptible to sexual harassment and retaliation after Plaintiffs' reports.

93. The District's conduct was in no way reasonably designed to help Jane Doe or stop the hostile educational environment.

14

94. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

95. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

96. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

### COUNT IV: SECTION 1983 DUE PROCESS PRIVACY VIOLATION

97. Plaintiffs hereby incorporate the foregoing pleaded facts as if fully restated herein.

98. Plaintiff Jane Doe possesses a right to privacy protected under the Fourth and Fourteenth Amendments.

99. Plaintiff Jane Doe's sexual experiences were a deeply personal matter that she reasonably expected to remain private and beyond the voyeuristic eye of a District employee.

100. Defendant Coach Hutchinson, while acting in his scope of employment and under color of state law on District property and during District programming, sought to elicit sexual information about Jane Doe from a male student.

101. This had been a common practice of Coach Hutchinson – to inquire of male athletes under his supervision what sexual acts they had performed with District female students.

102. Coach Hutchinson violated Plaintiff Jane Doe's privacy rights both by causing private information to be disclosed publicly and by the intrusion upon seclusion, in that the mere act and method of inquiry would be highly offensive to a reasonable person.

103. The District had actual knowledge that its employee, Coach Hutchinson, was engaging in this ongoing intrusive questioning of his male athletes and endorsed it.

104. The District had actual knowledge that Coach Hutchinson's job would put him in routine contact with young men under his supervision and that sex education would from time to time be a necessary part of his job.

105. The District failed to train Coach Hutchinson appropriately regarding the right way to offer young men guidance and counseling on sexual matters without intruding upon the privacy of female students or deriving gratification from the occasion.

106. The District had actual knowledge that any training it did provide Coach Hutchinson was completely ineffective.

107. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

108. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

109. There is no qualified immunity available to Defendants as Plaintiffs' privacy rights in this context were long ago clearly established by Tenth Circuit precedent, including *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994).

110. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

## COUNT V: SECTION 1983 EQUAL PROTECTION VIOLATION

111. Plaintiffs hereby incorporate the foregoing pleaded facts as if fully restated herein.

112. Coach Hutchinson singled out Plaintiff Jane Doe as a "class of one" for sexual harassment and invasion of her privacy on the basis of her gender.

16

113. Coach Hutchinson did not treat similarly situated male students in the same fashion as he treated Plaintiff Jane Doe.

114. Coach Hutchinson, while sexually harassing Plaintiff Jane Doe and asking other male students about Plaintiff Jane Doe's personal sex life, continued his practice of making sexual comments about female District students at school in front of other students and District employees, including in the presence of Plaintiff Jane Doe.

115. There was no rational basis for Coach Hutchinson to single out Jane Doe, or any other female District student, for sexual harassment and privacy invasions.

116. Coach Hutchinson was acting under color of law, in his capacity as a District teacher and coach, on District property, during District programs and during District operating hours.

117. Defendants' conduct was wanton and in reckless disregard for the rights and safety of Jane Doe.

118. Defendants' conduct exhibited deliberate indifference to Jane Doe's rights and wellbeing.

119. There is no qualified immunity available to Defendants as Plaintiffs' privacy rights in this context were long ago clearly established by Tenth Circuit precedent, including *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994).

120. As a direct result of Defendants' conduct, Plaintiff Jane Doe suffered lost educational opportunities, medically significant emotional distress, pain and suffering, lost earning capacity and medical bills.

WHEREFORE, Plaintiffs pray for an award of actual damages against Defendants, for attorneys fees together with interest and costs of suit and for such and further legal and equitable relief as is deemed just and proper.

Respectfully submitted,

BROWN & CURRY, LLC


/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF


## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all triable issues.

/s/Dan Curry
Dan Curry, KS #22750
Sarah Brown, KS #12130
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff designates Kansas City, Kansas, as the place of trial.

<u>/s/Dan Curry</u>
Dan Curry, KS #22750
Sarah Brown, KS #12130
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
(816) 666-9596 (FAX)
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF