**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JANE DOE, and ANGELA HARRISON, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>USD No. 237, THE SMITH CENTER )<br>SCHOOL DISTRICT, et al., )<br>)<br>Defendants. ) | Case No. 16-2801-JWL-TJJ |

## <u>MEMORANDUM AND ORDER</u>

Before the Court are Defendants' Motion for Protective Order (ECF No. 97) and

Plaintiffs' Motion to Compel (ECF No. 102). Both motions are now fully briefed.[1] For the

reasons discussed below, the Court grants in part and denies in part Plaintiffs' motion to compel,

and grants in part and denies in part Defendants' motion for protective order.

### I.     Relevant Background

Plaintiff Jane Doe was a student at Smith Center High School from 2013 to 2016.[2]

Plaintiffs claim that during that time, Defendant Brock Hutchinson, a teacher and coach at the

High School, asked Doe's boyfriend what kind of sexual acts Doe liked to perform, told Doe's

---

[1] Both parties originally sought leave to file their motions under seal, which the Court denied. *See* ECF No. 100. The parties were instead instructed to file their motions with appropriate redactions. Plaintiffs filed their redacted Motion to Compel (ECF No. 102) on February 22, 2019. Defendants filed their redacted memorandum in support (ECF No. 105) of their Motion for Protective Order (ECF No. 97) on February 26, 2019. Plaintiffs responded to the Motion for Protective Order on February 25, 2019, prior to the filing of the redacted memorandum in support (ECF No. 102). Defendants' response in opposition to Plaintiffs' motion to compel was stricken for failure to comply with D. Kan. Rule 7.1(e). *See* ECF No. 116, ECF No. 131. Defendants filed a Motion to Exceed Page Limitation of Response in Opposition to Motion to Compel and Reconsider the Order (ECF No. 131) Striking Defendants' Response (ECF No. 116). The Court denied that motion on April 2, 2019 but granted Defendants an extension of time to file their response (ECF No. 134), which Defendants filed on April 4, 2019 (ECF No. 136). Plaintiffs filed their reply on March 25, 2019 (ECF No. 129).

[2] *See generally* ECF No. 42 at 2–8. Because Doe was a minor at the time this lawsuit was filed, Angela Harrison was also named as a plaintiff, as Doe's next friend. The Court granted Doe leave to continue to proceed by pseudonym after she turned 18. *See* ECF No. 41.

gym class that "she's used to having balls between her legs," called Doe "dumb," and made other inappropriate sexual comments to and in front of minor students at the High School.[3] Plaintiffs contend they complained to the Defendant School District, but the School District took no action and continued to employ Hutchinson.

Plaintiffs also allege Hutchinson had a long history of sexual harassment of students dating back to approximately 2001, when Jane Doe Witness[4] began attending Smith Center High School as a freshman. Doe Witness was a student at the High School from 2001 to 2005.[5] Doe Witness testified that during her junior and senior years, while still a minor, she engaged in a physical relationship with Hutchinson.[6] Plaintiffs also cite declarations/affidavits from several individuals describing other allegedly inappropriate statements or actions of Hutchinson at times between 2003 and 2016, which Plaintiffs contend further support their claims in this case.[7]

Plaintiffs bring their allegations of sexual harassment and retaliation under Title IX of the Education Amendments Act of 1972, the Fourth and Fourteenth Amendments, and Kansas state law pursuant to the Kansas Tort Claims Act.[8] Specifically, Plaintiffs allege state law claims of negligent supervision/retention of employees and negligent supervision of children.[9]

---

[3] *See* ECF No. 42 at 3–4.

[4] Jane Doe Witness has been identified and the parties took her deposition on January 14, 2019. The Court entered an order providing that Jane Doe Witness be referenced by this pseudonym in this case to protect her identity and privacy to the extent possible. *See* ECF No. 100.

[5] *See* ECF No. 102 at 1; ECF No. 102-1.

[6] *Id.*

[7] *See* ECF No. 102-2; ECF No. 102-3; ECF No. 102-4; ECF No. 102-5; ECF No. 102-6.

[8] *See generally* ECF No. 42. Plaintiffs also assert allegations of the Fourth and Fourteenth Amendments through 42 U.S.C. § 1983, but only Plaintiffs' Title IX and Kansas state law claims are at issue for purposes of this order.

[9] ECF No. 42 at 19, 21. Plaintiffs also allege negligent infliction of emotional distress and outrage, but those claims are not at issue for purposes of this order.

## II. Analysis

### A. Meet and Confer Requirements Pursuant to D. Kan. Rule 37.2

In response to Plaintiffs' motion to compel, Defendants argue Plaintiffs did not properly confer as required by D. Kan. Rule 37.2 and as ordered by the Court during the January 25, 2019 status conference. It appears clear (Defendants do not suggest otherwise) that Plaintiffs sufficiently conferred regarding the parties' dispute over the relevance of Hutchinson's prior alleged conduct and the disclosure of the School District's investigative report. But Defendants contend Plaintiffs did not properly confer regarding the production of Hutchinson's personnel file and the production of documents and answers to interrogatories dating back to 2001. Instead, Defendants argue Plaintiffs have only requested discovery from 2003 to present.

As support for their position that they have properly conferred, Plaintiffs point to their golden rule letter,[10] Defendants' response to their golden rule letter,[11] their discussions with defense counsel regarding Hutchinson's personnel file on December 21, 2018,[12] the discussions during the January 25, 2019 status conference, and the emails sent following the status conference, on January 27, 2019 and January 30, 2019.[13]

Defendants, however, state that they sent the January 27 email to Plaintiffs, addressing the disputed discovery issues with a number of inquiries regarding Plaintiffs' position. But, Defendants note that Plaintiffs' January 30 response email simply stated they were going to file their motion to compel.[14]

---

[10] ECF No. 102-11.

[11] ECF No. 102-12.

[12] ECF No. 129 at 7.

[13] ECF No. 102-13.

[14] ECF No. 136 at 17.

District of Kansas Rule 37.2 states the court will not entertain any motion to resolve a discovery dispute unless the attorney for the moving party has conferred or made reasonable effort to confer with opposing counsel before filing the motion. It further states a "'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."

Based on the briefing and argument presented at the January 25, 2019 status conference, the Court finds the parties have sufficiently conferred regarding the disputes at issue. Although during the January 25 status conference the Court encouraged the parties to *continue* to confer to try to resolve some or all of the issues before filing their separate motions, and a substantive response from Plaintiffs regarding the issues stated in Defendants' January 27 email would have been preferred, it was clear from the discussions during the status conference that the Court and counsel contemplated a motion to compel and a motion for protective order would be forthcoming. Shortly thereafter, Defendants' motion for protective order and Plaintiffs' motion to compel were filed. The two motions raise nearly identical issues — primarily, the temporal scope of discovery and the subject matter scope of discovery.

"[D]espite the unqualified language in the federal and local rules, the court, in its discretion, may choose to determine a motion to compel on its merits" in certain circumstances.[15] The Court finds in this instance that the interests of justice will be better served by addressing the merits of Plaintiffs' motion to compel and Defendants' motion for protective order at the same time. The Court therefore will not deny Plaintiffs' motion on procedural grounds. Rather, it will

---

[15] *Miller v. NEP Grp., Inc.*, No. 15-cv-9701-JAR, 2016 WL 6395205, at *3 (D. Kan. Oct. 28, 2016) (citations omitted).

fully consider the merits of both motions pending before it. Because Plaintiffs' motion to compel and Defendants' motion for protective order address nearly identical issues — they are in many respects the flip side of one another — the Court considers all of the briefing of both motions in its analysis here.

###    B.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. It states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Considerations of both relevance and proportionality now govern the scope of discovery.[16] Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[17] The 2015 amendment to Fed. R. Civ. P. 26(b)(1) removed the requirement that information must be "reasonably calculated to lead to the discovery of admissible evidence," because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[18] At the discovery stage, relevance is broadly construed, and discovery should generally be allowed "unless it is clear that the information sought can have no possible bearing on the subject matter of the action."[19]

---

[16] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[17] *Rowan v. Sunflower Elec. Power Corp.*, No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[18] Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[19] *Stonebarger v. Union Pac. R.R. Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *3 (D. Kan. Jan. 5, 2015) (quoting *Snowden By and Through Victor v. Connaught Labs., Inc.*, 137 F.R.D. 325, 341 (D. Kan. 1991), *appeal denied*, 1991 WL 60514 (D. Kan. Mar. 29, 1991)).

"When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[20] When the discovery sought is "overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."[21] Relevancy is determined on a case-by-case basis.[22]

Federal Rule of Civil Procedure 26(c)(1) provides the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order has the burden of demonstrating good cause for it.[23] To prove good cause, the moving party must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[24] Whether to enter a protective order is within the court's discretion.[25]

### C. Scope of Discovery as to Time

In their motion for protective order, Defendants argue discovery should be limited to 2013 to 2016 — the years Doe was a Smith Center student. They contend Plaintiffs' discovery

---

[20] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[21] *Id.*

[22] *Rowan v. Sunflower Elec. Power Corp.*, No. 15-cv-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

[23] *Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*, No. 17-2666-JAR-GEB, 2019 WL 195030, at *5 (citing *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007)).

[24] *Id.*

[25] *Id.*

requests, which seek information from 2003 forward, and their motion to compel, which seeks information from 2001 forward, request irrelevant information beyond the time period permitted by Fed. R. Civ. P. 34(b)(2).[26]

Plaintiffs argue the facts now show that Hutchinson engaged in a pattern of ongoing sexual harassment from at least 2001 forward.[27] They argue this time frame is relevant to both their Title IX claims and their state law claims, because they are required to show the School District had actual knowledge of and was deliberately indifferent to the harassment, and that there is a causal relationship between the dangerous propensity or qualities of Hutchinson, of which the School District has or should have knowledge, and the injuries suffered.[28]

Plaintiffs accurately note that in order to state a claim under Title IX for a hostile educational environment, a plaintiff must show a school "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school."[29] Plaintiffs also accurately cite the standard for stating a claim of negligent supervision of an employee under Kansas law, which requires a showing of a causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person.[30]

"[I]n the context of *employment discrimination cases*," courts have commonly extended the scope of discovery "to a reasonable number of years both prior to and following" the liability

---

[26] ECF No. 136 at 19–20.

[27] ECF No. 102 at 8.

[28] *See id.* at 9–12.

[29] *Id.* at 10 (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

[30] *Id.* at 12 (citing *Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 596 (Kan. 1991)).

period.[31] Defendants cite several employment discrimination cases[32] in which courts have limited the temporal scope of discovery to five years or less. But none of the employment discrimination cases cited involve Title IX claims, and some do not even involve allegations of sexual harassment.[33]

In contrast, this case is not an employment discrimination case but instead a case involving Title IX claims and negligent supervision and retention claims. The alleged sexual harassment in this case occurred not in the workplace but instead at a high school. And, whereas some the cases Defendants cite involved allegations of sexual harassment between coworkers — adult coworkers — here, Plaintiffs allege an adult teacher sexually harassed minor students and the School District knew about it but with deliberate indifference failed to take appropriate action to protect the students.

The Court notes three cases cited in this case involving Title IX claims and negligent supervision and/or negligent retention claims with allegations of sexual harassment of students by teachers, in which courts have expanded the temporal scope of discovery considerably beyond that allowed in the employment discrimination cases cited by Defendants.[34] The Court considers each of the three cases cited in turn.

---

[31] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002) (emphasis added).

[32] ECF No. 136 at 20.

[33] *See Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649 (D. Kan. 2004) (involving claims of discrimination based on age and gender); *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208 (D. Kan. 2002) (involving claims of sex and pregnancy discrimination and retaliation); *E.E.O.C. v. Kansas City S. Ry.*, 195 F.R.D. 678 (D. Kan. 2000) (involving claims of race discrimination); *Garrett v. Sprint PCS*, No. 00-2583-KHV, 2002 WL 181364 (D. Kan. Jan. 31, 200) (involving claims of religious discrimination).

[34] *See John Doe 4 v. Freeburg Cmty. Consol. Sch. Dist. No. 70*, 279 F. Supp. 3d 807, 810 (S.D. Ill. 2017); *Escue v. N. Okla. Coll.*, 450 F.3d 1146 (10th Cir. 2006); *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217 (D. Kan. Feb. 11, 2008).

Although *John Doe 4 v. Freeburg Cmty. Consolidated Sch. Dist. No. 70*[35] is not a Kansas or 10th Circuit case, the Court finds the case instructive because it is a Title IX case in which the plaintiff alleged he was sexually harassed and abused at school when he was a minor student by the school superintendent (and former teacher and coach), who had previously abused other students. The court considered issues that are also pertinent to Plaintiffs' claims in this case, finding in *John Doe 4* there was "no doubt" the school district had actual knowledge of the employee's "purported misconduct with minor male students well before anything happened to [p]laintiff."[36] The court also found deliberate indifference by the school district because officials knew the employee "had been accused three times within a roughly ten year span of sexually abusing male students on school premises during school hours," but the school district failed to monitor the teacher or implement protective measures.[37] Notably, in reaching its conclusions, the court in *John Doe 4* considered evidence spanning more than 20 years prior to when the plaintiff was a student at the school.[38]

*Escue v. N. Okla. Coll.*[39] is a Tenth Circuit case involving Title IX claims by a college student who alleged her professor sexually harassed her, and the college failed to supervise and adequately investigate the professor after prior incidents of harassment. The prior instances occurred nearly ten years before the plaintiff's complaints.[40] Although the court ultimately found that those prior instances were not sufficient to put the school on notice of the professor's

---

[35] 279 F. Supp. 3d 807 (S.D. Ill. 2017).

[36] *Id.* at 814.

[37] *Id.* at 815.

[38] The court considered evidence from 2006 to 2009 while the plaintiff was a student as well as allegations from as far back as 1980.

[39] 450 F.3d 1146 (10th Cir. 2006).

[40] *Id.* at 1154.

behavior, the instances from nearly ten years prior were allowed to be discovered and evidence about them was presented to the court.[41]

Finally, in *C.T. v. Liberal Sch. Dist.*,[42] three minor high school students alleged they were sexually abused and harassed by a volunteer weight training coach for student athletes in Liberal, Kansas.[43] The court allowed discovery requests going back ten years, finding that evidence of complaints regarding sexual discrimination or sexual harassment or sexual misconduct of a student "would likely be readily ascertainable and could lead to the discovery of admissible evidence."[44]

The Court finds Plaintiffs are entitled to conduct discovery concerning a reasonable number of years both prior to and following the liability period (when Doe was in high school), and the temporal scope of discovery should be expanded beyond that normally allowed in employment discrimination cases due to the factual allegations and the nature of the claims for this Title IX case. Discovery regarding prior alleged acts of sexual harassment by Hutchinson, regarding whether the School District had actual knowledge of those prior acts, and whether it responded with deliberate indifference to those acts is relevant. Similarly, with regard to Plaintiffs' negligent supervision and retention claims, discovery regarding whether the School District knew of alleged dangerous propensities of Hutchinson that posed a danger to students is relevant. The Court notes that Doe Witness has already testified that she had a physical relationship with Hutchinson in 2003 to 2005, during her junior and senior years of high school. And, Plaintiffs provide affidavits from other witnesses from around the same time period

---

[41] *Id.*

[42] Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217 (D. Kan. Feb. 11, 2008).

[43] *See C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1328–31 (D. Kan. 2008).

[44] *Liberal*, 2008 WL 394217, at *12–13.

regarding other allegations of inappropriate conduct by Hutchinson. For example, they provide an affidavit from Heath Johnson, who was a teacher and coach at Smith Center High School from 2002 to 2006.[45] Mr. Johnson says he heard Hutchinson make inappropriate sexualized comments about cheerleaders. This is in line with Plaintiff's allegations.[46] Further, Doe Witness was a cheerleader during her relationship with Hutchinson[47] and Doe Witness's cheerleading coach says she reported her concerns about Hutchinson's talking and flirting with Doe Witness to the School District's Athletic Director.[48] Plaintiffs cite other complaints regarding Hutchinson's conduct in the years between when Doe Witness and Doe attended the High School. A female student who helped with Hutchinson's wrestling team from her sophomore through her senior year in 2012 says she witnessed Hutchinson "tell inappropriate sexual comments and stories to his wrestlers on a regular and continual basis" and make sexual comments to her and other female students.[49] Reports such as these from various witnesses regarding Hutchinson dating from 2003 forward make clear that Plaintiffs are not merely seeking to embark on a fishing expedition with their request to conduct discovery concerning Hutchinson's earlier alleged misconduct.

Plaintiffs request discovery from 2003 forward in their discovery requests, and from 2001 forward in their motion to compel. The Court finds that the temporal scope of otherwise permissible discovery that will be allowed in this case is from 2003 forward.[50] This includes the

---

[45] ECF No. 102-4.

[46] ECF No. 42.

[47] ECF No. 102 at 3.

[48] ECF No. 102-3 at 2.

[49] ECF No. 102-5 at 1.

[50] The Court will consider each of Plaintiffs' discovery requests that are in dispute individually below, to determine whether they are otherwise relevant and proportional in accordance with Fed. R. Civ. P. 26.

period ten years before Doe began attending Smith Center, which the Court determines relevant and appropriate with regard to the claims in this case as discussed above. Given that Plaintiffs' discovery requests specifically seek information only from 2003 forward and that Doe Witness testified her physical relationship with Hutchinson did not begin until 2003, the Court will not extend the temporal scope of discovery to 2001. Plaintiffs' motion to compel is therefore granted in part and denied in part on this issue, and Defendants' motion for protective order is granted in part and denied in part on this issue, insofar as the Court finds the relevant time frame for discovery to be 2003 forward.

### D. Scope of Discovery as to Subject Matter

Plaintiffs seek further discovery into Hutchinson's relationship with Doe Witness. Defendants argue this relationship is not relevant to Plaintiffs' claims because it was physical and consensual, whereas Doe does not allege a physical relationship but rather offensive verbal statements.[51] Thus, Defendants contend Hutchinson's interactions with Doe and Doe Witness are not similar, and as a result, further discovery into Doe Witness and her relationship with Hutchinson is not relevant.

In their motion for protective order, Defendants argue further discovery into Hutchinson's relationship with Doe Witness is impermissible under Federal Rule of Evidence 403, and they cite cases regarding the admissibility of evidence.[52] But evidence does not need to be admissible at trial to be discoverable. Fed. R. Civ. P. 26(b) specifically states that information within the permissible scope of discovery "need not be admissible in evidence to be discoverable." As such, even if further evidence of Hutchinson's relationship with Jane Doe

---

[51] ECF No. 136 at 22.

[52] ECF No. 105 at 17–19.

Witness might not ultimately be admissible at trial, it is still discoverable as long as it is nonprivileged and otherwise relevant and proportional in accordance with Fed. R. Civ. P. 26.

As noted previously, discovery relevance is broad. Doe Witness testified in her deposition that she had a physical relationship with Hutchinson. Further, Doe Witness testified she was present when Hutchinson "discussed sexual activity with other students about either himself or his wife or his past girlfriend" and that it was "a common occurrence,"[53] which is extremely similar to Plaintiffs' allegations that Hutchinson made inappropriate sexual comments to and in front of Doe and other students. To that end, the allegations involving Doe Witness are in fact more severe insofar as they involved a physical relationship of a sexual nature between Hutchinson and a minor student. This does not make Hutchinson's relationship and conduct involving Doe Witness dissimilar and irrelevant to Doe's claims. The Court rejects Defendants' argument to that effect.

Defendants also state over and over again that Doe Witness's relationship with Hutchinson was consensual.[54] Therefore, they argue, the relationship could not constitute sexual harassment. But, the cases Defendants cite as support involved sexual relationships between consenting adults,[55] not a minor student having a sexual relationship with an adult teacher. Defendants also cite as support K.S.A. 21-5512.[56] But, their argument that Kansas did not adopt this criminal statute prohibiting sex between a teacher and a student under the age of 18 until several years after the relationship between Hutchinson and Doe Witness ended is unpersuasive

---

[53] ECF No. 102-1 at 17.

[54] ECF No. 105 at 14–18; ECF No. 136 at 21–25.

[55] *See* ECF No. 105 at 15 (citing *Ulrich v. K-Mart Corp.*, 858 F. Supp. 1087, 1092 (D. Kan. 1994) (involving prior relationships between adult co-workers); ECF No. 136 at 23 (citing *Escue v. N. Okla. Coll.,* 450 F.3d 1146, 1154 (10th Cir. 2006) (involving a college professor dating "non-traditional students nearly his own age").

[56] ECF No. 105 at 16 n.3.

and perplexing. The Court rejects Defendants' argument that the relationship between Hutchinson and Doe Witness was consensual and therefore is not relevant to Plaintiffs' sexual harassment claim.

As Plaintiffs note, the Tenth Circuit affirmed this Court's denial of Hutchinson's motion to dismiss based on qualified immunity, finding "any reasonable high school teacher would have understood that the conduct alleged created a hostile environment in violation of Doe's equal protection rights."[57] The physical relationship between Doe Witness and Hutchinson is one of the facts Plaintiffs have alleged in support of their hostile environment claim. Regardless of whether Doe Witness viewed the relationship as consensual and even though she may have desired to keep the relationship confidential then and now, Plaintiffs allege others were aware of the relationship at the time. Plaintiffs contend Doe Witness's cheerleading coach reported her concerns regarding the relationship between Doe Witness and Hutchinson to the school administration and that Doe Witness's father went to the school administration with concerns about his daughter's relationship with Hutchinson. As discussed at length above, Hutchinson's relationship with Doe Witness while she was a minor student, the School District's knowledge of such relationship, and the School District's actions or inaction in response are relevant to Plaintiffs' claims of a hostile educational environment under Title IX and to their claims of negligent supervision of an employee under Kansas law. The relationship is relevant to Plaintiffs' claims that Hutchinson had a history of inappropriate sexual conduct with minor female students, about which the school district knew but failed to address. Plaintiffs are entitled to conduct discovery regarding the relationship between Doe Witness and Hutchinson.

---

[57] *Doe v. Hutchinson*, 728 Fed. Appx. 829, 835 (10th Cir. 2018).

Further, the Court finds it significant that *Defendants* subpoenaed Doe Witness to take her deposition, not Plaintiffs. Having opened the door to her relationship with Hutchinson in an effort to establish that it was consensual, Defendants may not now cut off further discovery into that relationship on the basis of privacy concerns. The Court finds further discovery into Doe Witness's relationship with Hutchinson relevant, grants Plaintiffs' motion to compel, and denies Defendants' motion for protective order on this issue.

Finally, Defendants argue the privacy interests of Doe Witness and Hutchinson outweigh any relevance the discovery might have.[58] But this Court has already ruled that Doe Witness may proceed under her pseudonym,[59] and the parties have already agreed that her deposition testimony be protected under the protective order entered in this case.[60] With those protections in effect, the relevance of the discovery outweighs any remaining privacy concerns.

### E. Individual Discovery Requests

Although the Court has found that discovery generally dating back to 2003 and discovery regarding Doe Witness's relationship with Hutchinson to be relevant, the Court considers the individual discovery requests at issue.

#### 1. General Objections and Supplemented Answers

Plaintiffs argue Defendants' general and "subject to" objections are not proper. Although the parties agree general objections are generally disfavored in this district, Defendants argue their objections are specific and they have answered each request to the extent it is not objected to pursuant to Fed. R. Civ. P. 33(b)(3). The Court agrees that as to each individual discovery request, Defendants have asserted specific objections, which the Court addresses throughout this

---

[58] ECF No. 105 at 20–22; ECF No. 136 at 24–25.

[59] ECF No. 100.

[60] *See* ECF No. 58.

order. Because the Court considers each discovery request and each answer and objection, it does not require Defendants to withdraw their general objections and does not waive their objections. Instead, it rules on each dispute as set forth below.

### 2. Personnel Files

Plaintiffs move to compel "Hutchinson's entire personnel file, the Superintendent's file, the Principal's file, and the Athletic Department file on Hutchinson."[61] Plaintiffs base their motion and claim to these documents on their Requests for Production of Documents (RFPD) Nos. 20, 21, 22, and 23. They argue the personnel files are relevant and discoverable under applicable District of Kansas case law.[62]

Defendants claim Plaintiffs did not request Hutchinson's entire personnel files but rather "personnel-type records of Hutchinson from 2003 to the present."[63] They argue these requests are overly broad, vague and unduly burdensome due to Plaintiffs' use of the terms "regarding," or "related to" and the overly broad time period included in the requests. And they argue many documents in these personnel files "contain highly personal and confidential information" and are not relevant or proportional to the needs of this case.[64] As such, Defendants contend they properly limited the scope of their production to documents reasonably understood to be within the scope of discovery permitted and within the period of time Doe attended the High School, 2013 to 2016.

---

[61] ECF No. 102 at 11.

[62] *Id.* at 12–13 (citing *White v. Graceland Coll. Ctr. For Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d. 1250, 1259–60 (D. Kan. 2008) and *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217 (D. Kan. Feb. 11, 2008)).

[63] ECF No. 136 at 33.

[64] *Id.* at 34.

RFPD No. 20 to the School District states: "All USD No. 237, the Smith Center School District files, including but not limited to, *any personnel file*, disciplinary file, payroll file and other documents kept in the usual course of business regarding Coach Hutchinson for the time period of 2003 to the present."[65] Defendants' response to the motion to compel paraphrases RFP No. 20, omitting the express request for "any personnel file." Thus, Defendant's assertion that Plaintiffs did not request Hutchinson's entire personnel file is inaccurate and inconsistent with Defendants' prior communication with Plaintiffs.[66]

In this district, courts have generally held that "an individual's personnel file is relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual is alleged to have engaged in the retaliation or discrimination at issue or to have played an important role in the decision or incident that gives rise to the lawsuit."[67] Although this general rule comes from employment discrimination and civil rights cases, it has also been applied under other circumstances.[68]

Hutchinson is alleged to have engaged in the discrimination at issue in this case. Several complaints regarding Hutchinson were allegedly made to school officials. Any complaints regarding Hutchinson, and any action school officials took in response, presumably would be included in his personnel files. And indeed, if the complaints are not included in the personnel files, that would presumably be relevant as well.

---

[65] ECF No. 102-8 at 23 (emphasis added).

[66] *See* ECF No. 105-8 at 9 (in a letter from Defendants' counsel to Plaintiffs' counsel on January 22, 2019 in response to Plaintiffs' December 27, 2018 golden rule letter, Defendants state, "With regard to Plaintiffs' request for Defendant Hutchinson's entire personnel file (Request No. 20), Defendant produced Defendant Hutchinson's teaching license, employment contracts, evaluations and professional development records during the time Plaintiff [Jane Doe] attended Smith Center High School.").

[67] *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217, at *3 (D. Kan. Feb. 11, 2008) (citations omitted).

[68] *Id.*

Regarding any privacy concern Defendants have with disclosing Defendant Hutchinson's personnel files, a protective order has been entered in this case.[69] The parties anticipated that "employment and personnel records" would be disclosed through discovery.[70] Defendants fail to articulate why the protective order is insufficient to protect Defendant Hutchinson's privacy interests.

Hutchinson's personnel files are relevant on their face. In accordance with the temporal scope ruling above, the Court finds Hutchinson's personnel files from 2003 forward to be relevant and discoverable in this case. The Court overrules Defendants' objections and grants Plaintiffs' motion to compel RFPD No. 20 insofar as it requests Hutchinson's personnel files from 2003 forward.

RFPD No. 21 to the School District requests: "All documents and/or records relating to Coach Hutchinson maintained by any administrator or employee in the office of the *Superintendent of . . . the Smith Center School District*, including for the time period of 2003 to the present." RFPD Nos. 22 and 23 are identical to No. 21, except that the italicized language is replaced with "Principal of Smith Center High School" and "Athletic Department of Smith Center High School," in requests 22 and 23, respectively.

As for the superintendent, principal, and Athletic Department files, RFPD Nos. 21, 22 and 23 are overly broad, vague and ambiguous insofar as they request all documents and/or records relating to Hutchinson, without limitation. Unlike RFPD No. 20, these three requests do not reference Hutchinson's personnel files or any other particular files or documents regarding Hutchinson. However, to the extent Plaintiffs seek all of Hutchinson's personnel files (including

---

[69] ECF No. 58.

[70] *Id.* at 2.

all nonprivileged phone messages, emails, recordings, notes, memoranda, statements, investigations and communications contained in them), regardless of where and by whom they are maintained,[71] the Court overrules Defendants' objections and grants Plaintiffs' motion to compel. Defendants shall produce Hutchinson's personnel files, maintained and/or kept by the superintendent, principal, Athletic Department, or any other administrator or administrative office of the School District, from 2003 forward.

The Court does not read RFPD Nos. 21, 22, and 23 or Plaintiffs' motion to compel as seeking to obtain the personnel files of the principal, superintendent, or athletic director. To any extent such request may be implied, the Court denies the request. Plaintiffs have made no showing as to how personnel files of anyone other than Hutchinson are relevant.

### 3. FERPA Objections

Plaintiffs contend that Defendants improperly objected to its First Interrogatories Nos. 1 and 2 and its RFPD Nos. 2 and 4 to the School District, and RFPD No. 2 to Hutchinson,[72] based on FERPA.[73] Defendants claim they have not withheld any documents based on a FERPA objection, but rather they included reference to FERPA to make clear the documents were being produced subject to the Protective Order in this case and to preserve the FERPA issue should Plaintiffs later seek to use the documents beyond the terms provided for in the Protective Order.[74]

Courts in this district have previously found that an educational institution may disclose personally identifiable information from a student's education record through discovery "as long

---

[71] Plaintiffs say based on discovery they "know more than one file on Hutchinson exists and the files may contain relevant information to Plaintiffs' claims." (ECF No. 129 at 14).

[72] ECF No. 102 at 20.

[73] Family Educational Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. § 99).

[74] ECF No. 136 at 36.

as (1) the parental notification requirements of the regulation are met and, (2) a protective order restricts disclosure of the information for the purposes of the litigation."[75] It appears based on Defendants' response that the Defendants are complying with the parental notification requirements of FERPA, and there is a Protective Order in place in this case that places appropriate restrictions on the disclosure of the information at issue. Moreover, Defendants indicate they have not withheld any documents based on FERPA.

Defendants shall supplement their responses to RFPD Nos. 2 and 4 to the School District and RFPD No. 2 to Hutchinson to clearly state that they have produced all responsive documents, and/or clearly identify any request to which they have not produced responsive documents and state that they will produce such documents after complying with the FERPA guidelines stated above. Defendants shall likewise supplement their responses to clearly state that they have fully answered Interrogatories Nos. 1 and 2 to the School District. To the extent Defendants now have additional documents to turn over based on the rulings in this order, Defendants shall produce such documents after complying with the FERPA guidelines stated above.

### 4. Training Documents and School District Policies

Plaintiffs request training documents; policies and procedures on supervision of employees; policies and procedures concerning sexual harassment, bullying, discrimination, retaliation, and student rights; and board of education policies regarding hiring and retention of employees. These requests are found in RFPD Nos. 24 to 33 to the School District.[76] Defendants objected to these requests on grounds that they fail to describe with reasonable particularity each

---

[75] *C.T. v. Liberal Sch. Dist.*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008) (citations omitted).

[76] *See* ECF No. 102 at 19–20; ECF No. 102-8 at 28–36.

item or category of items requested, and thus are overly broad, vague, ambiguous, and unduly burdensome, and because they seek documents beyond the scope of the time period relevant to Plaintiffs' claims.[77] Defendants argue in their response that Plaintiffs have failed to explain why the requested documents are relevant, and that they produced responsive policies from 2013 to 2016, the years Doe was a student at Smith Center.[78]

As to RFPD Nos. 32 and 33, the Court overrules Defendants' objection. Defendants object only as to scope in time, arguing that only the period when Doe was a student at the High School, 2013 to 2016, is relevant. However, as discussed above, Plaintiffs have alleged improper acts and comments of a sexual nature by Hutchinson dating back to 2003, and the Court has found that the relevant temporal scope in this case is from 2003 forward. Regardless of when they were adopted, all responsive policies and procedures in effect at any time during the period 2003 to present are relevant. The relevance of those policies and procedures, any changes in them, and whether the School District was following them throughout this time period is readily apparent. Defendants have failed to show otherwise. Defendants shall produce all policies and procedures that were in place from 2003 forward, regardless of when the policies were adopted.

As to RFPD Nos. 24 to 31, Defendants' objection as to scope in time is overruled as discussed above. Defendants also object to these requests as overly broad in subject matter scope, vague, ambiguous, and unduly burdensome. When the discovery sought is "overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."[79] A request is overly broad on its face "if it is couched in such broad language as to make arduous the task of deciding which of numerous

---

[77] ECF No. 102-8 at 28–36. Defendants objected only as to scope in time regarding RFPD Nos. 32 and 33.

[78] ECF No. 136 at 35. Defendants do not include argument regarding RFPD No. 33 in their response.

[79] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

documents may conceivably fall within its scope."[80] The Court considers the overall wording of a request in determining whether it is overly broad.[81]

    To succeed on a "vague and ambiguous" objection, the objecting party "must show that more tools beyond mere reason and common sense are necessary to attribute ordinary definitions to terms and phrases utilized."[82]

    "A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[83] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[84] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[85]

    The Court overrules Defendants' objections insofar as they argue the requests are not relevant on their face. As discussed above, the Court finds the policies and procedures in place from 2003 forward to be relevant. The Court also does not find the request to be overly broad. Courts in this district have held that requests seeking "all documents" may be overbroad and unduly burdensome on their face when the request does not contain an omnibus phrase that

---

[80] *Stonebarger v. Union Pac. R.R. Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *4 (D. Kan. Jan. 5, 2015) (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 658–59 (D. Kan. 2006) (internal citations omitted)).

[81] *Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *8 (D. Kan. Feb. 24, 2012) (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665–66 (D. Kan. 1999)).

[82] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-cv-2516-JAR, 2011 WL 765882, at *2 (D. Kan. Feb. 25, 2011) (quoting *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 696 (D. Kan. 2007)).

[83] *Stonebarger*, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[84] *Id.*

[85] *Id.*

"modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents."[86] Here, though Plaintiffs' request "all training material" and "all policy and procedure material" in each of its RFPD Nos. 24 to 31, each request specifies the type of training material or policy and procedure material requested. For example, in RFPD No. 24, Plaintiffs request all training materials "that relate to the supervision of employees for the time period of 2003 to present," and in RFPD No. 26 they request all training materials "that relate to bullying and/or harassment for the time period of 2003 to present." Each request specifies what training materials and policies it is requesting (relating to supervision of employees, relating to bullying and/or harassment), and is also limited in temporal scope to 2003 to present. The requests are narrow enough in type (training material or policy and procedure material), subject matter, and temporal scope such that they are not overly broad or unduly burdensome on their face.[87] Therefore, the Court also overrules Defendants' remaining objections regarding RFPD Nos. 24 to 31.

Plaintiffs also seek staff and teacher handbooks from 2003 to present in their RFPD No. 9 to Hutchinson.[88] Defendants objected as to the scope of time and produced the handbooks only for the period from 2013 to 2016. As discussed above, Defendants' objection is overruled. However, Defendants indicate in their response that they produced all documents responsive to RFPD No. 9 "without regard to time period." Defendants shall supplement their answer to RFPD No. 9 to state that all responsive documents from 2003 forward have been produced.

---

[86] *Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006) (citations omitted).

[87] *See Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *10 (D. Kan. Feb. 24, 2012) (finding a request seeking "all files, documents, memoranda, notes, or e-mails created or revised since January 1, 2006, discussing Robinson" to be neither facially overly broad nor unduly burdensome).

[88] ECF No. 102-10 at 10–11.

5. *Interrogatory No. 17 and RFPD Nos. 37–39 to Defendant USD No. 237 and RFPD No. 12 to Defendant Hutchinson*

Interrogatory No. 17 to the School District states: "Please list each incident or claim reported to you for any type of bullying, harassment, discrimination or retaliation of a student from 2003 to present, including in your answer the date of each incident or claim, a brief summary of the facts underlying the incident or claim, the identity of the person(s) involved in the incident or claim, and the findings and conclusions made with regard to each such incident or claim."[89] Defendants objected on the basis that it exceeds the number of interrogatories allowed by Fed. R. Civ. P. 33(a)(1) and the Amended Scheduling Order (ECF No. 70), which limits the maximum number of interrogatories, including discreet subparts, to 30. They also objected that the interrogatory was overly broad in scope, vague, ambiguous, unduly burdensome, and not relevant. They argue incidents of alleged bullying, harassment, discrimination, or retaliation involving individuals other than Plaintiff Jane Doe are not relevant. They also object as to temporal scope and assert attorney/client privilege.

Similarly, RFPD Nos. 37–39 to the School District seek all documents concerning incidents of bullying, harassment, discrimination or retaliation of students, staff or faculty members maintained by USD No. 237 or Smith Center High School, from 2003 to present. Defendants raise generally the same objections (overly broad, vague, ambiguous, unduly burdensome, and overly broad as to temporal scope).[90] RFPD No. 12 to Hutchinson also seeks all documents concerning incidents of bullying, harassment, discrimination or retaliation of students, with the same objections from Defendants.[91] Plaintiffs argue these requests are relevant

---

[89] ECF No. 102-7 at 46.

[90] ECF No. 102-8 at 38–41.

[91] ECF No. 102-10 at 12–13.

to show that the school district concealed "a longer pattern of harassment within its athletic program that is central to its Title IX liability" and to show negligent supervision and deliberate indifference.[92]

As written, the Court agrees these requests are overly broad on their face. They are not limited in scope as to subject matter. These requests ask for all complaints involving all incidents of bullying, harassment, discrimination or retaliation involving all staff or faculty members. Plaintiffs' requests should be narrowed to complaints involving Hutchinson. Plaintiffs fail to articulate how complaints involving any other staff or faculty member would be relevant to their claims. Therefore, Defendants' objections are sustained in part and overruled in part. Plaintiffs' requests shall be limited to complaints involving Hutchinson from 2003 forward.

Plaintiffs briefly mention RFPD No. 45 to the School District, which requests "all letters, memoranda or other documents relating to any complaints, accusations, charges or grievances received by the School District regarding Coach Hutchinson at any time since 2003." Defendants raised the same objections that the request is overly broad, vague, ambiguous, unduly burdensome, and overly broad in temporal scope. The objections are overruled consistent with the ruling stated above. Documents regarding complaints about Hutchinson, but not any other staff or faculty member, from 2003 forward, are relevant and not overly broad on their face.

6. *Interrogatories Nos. 18–22 to Defendant USD No. 237 and Interrogatories Nos. 7–9 to Defendant Hutchinson*

Plaintiffs argue Interrogatories Nos. 18–22 to the School District and Interrogatories Nos. 7–9 to Hutchinson request facts in support of Defendants' affirmative defenses. Defendants

---

[92] ECF No. 102 at 18.

contend in their response that Hutchinson has supplemented his answers, so this request is now moot. Plaintiffs do not argue otherwise in their reply.

With regard to Interrogatories Nos. 18–22 to the School District, Defendants argue Plaintiffs have exceeded the number of interrogatories submitted in violation of Fed. R. Civ. P. 26 and 33, as well as the Court's Scheduling Order.[93] They say the first 17 numbered interrogatories count as 42, so they should not be required to answer any further interrogatories.[94] Plaintiffs contend their interrogatories are "directed at eliciting details concerning a common theme" and are considered a single question.[95]

Per the Scheduling Order entered June 19, 2018, each party may serve no more than 30 interrogatories, including all discreet subparts.[96] Defendants do not cite any specific examples of an interrogatory they believe contains multiple subparts. They simply say based on their calculation, without explaining how they came to such calculation, that the first 17 numbered interrogatories are actually 42 interrogatories. But the cases they cite in support of their position found that interrogatories containing multiple subparts were actually "one interrogatory directed at eliciting details concerning a *common theme*" and were therefore not counted as multiple interrogatories.[97] In reviewing Plaintiffs' interrogatories, though some "could be construed" as having multiple subparts, each appears to attempt to elicit details concerning a common theme.[98] Therefore, the School District shall supplement its answers to Interrogatories Nos. 18–22.

---

[93] ECF No. 136 at 39–40.

[94] *Id.* at 40.

[95] ECF No. 129 at 19 (quoting *Rowan v. Sunflower Elec. Power Corp.*, No. 15-cv-9227-JWL-TJJ, 2016 WL 2772210, at *5 (D. Kan. May 13, 2016)).

[96] ECF No. 70 at 7.

[97] *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 620 (D. Kan. 2005) (emphasis in the original).

[98] *Id.*

The Court also finds as moot Plaintiffs' motion to compel regarding bates stamping. Defendants say in their response that they have identified by bates stamp the documents responsive to each request. Plaintiffs do not argue otherwise in their reply, so the motion to compel on this issue is found as moot.

### 7. 2016 Investigative Report

Plaintiffs seek discovery of investigations performed in response to Plaintiffs' complaints. Interrogatories Nos. 4 and 6 and RFPD Nos. 6, 7, 10, 12, and 14–17 to the School District request this information, which Defendants objected to on the basis of attorney-client privilege, the work product doctrine, and the insurer/insured privilege.[99] However, in the privilege log provided to the Court in anticipation of the January 25, 2019 status conference, Defendants listed only two documents and those were identified as protected by attorney-client privilege (not work-product or any other privilege). One of the documents listed is titled "Report on Investigation Re Teacher Harassment of Students prepared by Kansas Association of School Boards (USD35-61)."

At the January 25, 2019 status conference with counsel in this case, after discussion regarding the parties' opposing views on the discoverability of the referenced Report, the Court instructed Defendants' counsel to submit the Report for *in camera* review. Defendants did not do so, but instead asserted an objection in their response to Plaintiffs' motion to compel to submitting the Report for *in camera* review. [100] After studying the briefing on Plaintiffs' motion to compel and Defendants' motion for protective order, the Court entered an order on April 9, 2019, instructing Defendants' counsel to submit the report to chambers for *in camera* review

---

[99] *See generally* ECF No. 102-7 at 19–26; ECF No. 102-8 at 10–20.

[100] ECF No. 136 at 31–32.

"forthwith."[101] After receiving no response, the Court contacted counsel by email on April 10, 2019, again instructing Defendants' counsel to submit the Report for *in camera* review "forthwith." The Court emailed counsel a final time on April 12, 2019, once again instructing Defendants' counsel to submit the Report per its April 9, 2019 order. The Court intended to rule on the discoverability of the Report in this order, but as of the date of this order, it still has not received the Report from Defendants' counsel. Accordingly, the Court instructs counsel once more to submit the report for *in camera* review, forthwith, and cautions counsel that it will enter an order on the discoverability of the Report no later than April 18, 2019, taking into account Defendants' failure to comply with the Court's orders if the Report has not been submitted for *in camera* review before that date.

8. *"Our Boys: Perfect Season on the Plains with the Smith Center Redmen"*

Defendants request a protective order prohibiting Plaintiffs from seeking further discovery pertaining to the book, "Our Boys: A Perfect Season on the Plains with the Smith Center Redmen." Defendants say the book covers the 2008 High School football team and chronicles 30 years of history of the team.[102] They argue discovery of information pertaining to the book is factually and temporally irrelevant. Plaintiffs say they have not propounded specific discovery requests about the book but contend they should be able to ask witnesses if they knew about the book.[103] They also argue the book contains interviews given by Hutchinson and is therefore relevant.[104]

---

[101] ECF No. 141.

[102] ECF No. 105 at 23.

[103] ECF No. 103 at 15.

[104] *Id.*

Although the Court has found the relevant temporal scope of discovery to be from 2003 forward, the Court does not find the book to be relevant to Plaintiffs' claims in this case, and Plaintiffs have failed to make any showing that it is. The fact that Hutchinson is mentioned or quoted in a book about the 2008 football team does not make it relevant to Plaintiffs' allegations that Hutchinson sexually harassed Doe and other students, and that the school district knew about the harassment but took no action. Plaintiffs point to nothing specific in the book that would show otherwise and instead seem to argue that it is relevant just because it includes interviews given by Hutchinson. The Court finds Defendants have met their burden to demonstrate good cause for entry of a protective order regarding the book and grants their motion on that issue.

III.    **Conclusion**

Plaintiffs' motion to compel and Defendants' motion for protective order are granted in part and denied in part as discussed above. The Court finds the temporal scope of discovery that is relevant in this case to be 2003 forward. The Court finds Defendant Hutchinson's relationship with Jane Doe Witness to be relevant. That relationship, like Plaintiffs' claims, involve actions of a sexual nature between Defendant Hutchinson and minor female students. The Court rules on individual discovery requests at issue as discussed above. The Court does not find the book titled "Our Boys: A Perfect Season on the Plains with the Smith Center Redmen" to be relevant and grants Defendants' motion for protective order regarding discovery into the book.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Protective Order (ECF No. 97) is granted in part and denied in part as discussed herein.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel (ECF No. 102) is granted in part and denied in part as discussed herein.

**IT IS FURTHER ORDERED** that Defendants' counsel shall email a copy of the 2016 investigative report to Judge James's chambers forthwith.

**IT IS SO ORDERED.**

Dated April 15, 2019, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge