# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JANE DOE, and ANGELA HARRISON,  )
                                  Plaintiffs,  )
v.  )      Case No. 16-2801-JWL-TJJ
USD No. 237, THE SMITH CENTER  )
SCHOOL DISTRICT, et al.,  )
                                  Defendants.  )

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' motion to compel production of Defendants' 2016 pre-suit investigative report,[1] which Defendants have withheld on the bases of attorney client privilege and work product protection. The matter is fully briefed and the Court is ready to rule.

**I. Background**

Plaintiffs allege Defendant Brock Hutchinson, a teacher and coach at Smith Center High School, sexually harassed Plaintiff Jane Doe while she was a minor student at the High School from 2013 to 2016. They allege Hutchinson made inappropriate sexual comments to, about, and in the presence of Doe and other students.[2] They also allege Hutchinson had a long history of sexual harassment of students dating back many years.

Plaintiffs assert claims of sexual harassment and retaliation under Title IX of the Education Amendments Act of 1972, the Fourth and Fourteenth Amendments, and Kansas state

---

[1] Plaintiffs sought to compel production of this report and certain other documents and information in their February 22, 2019 motion to compel (ECF No. 102). The Court previously granted in part and denied in part the motion but deferred ruling on the report pending production of the report for *in camera* review (ECF No. 143).

[2] The factual background of this case is discussed in more detail in the Court's April 15, 2019 order (ECF No. 143). The Court will not reiterate the factual background again in detail here.

law pursuant to the Kansas Tort Claims Act. Specifically, they allege state law claims of negligent supervision/retention of employees and negligent supervision of children.

Doe's mother, Plaintiff Angela Harrison, complained to the Defendant School District's superintendent and the High School principal about Hutchinson's conduct in January 2015.[3] Harrison complained again in April 2016, this time to the school board, that she believed Doe was being retaliated against because of Plaintiffs' prior complaints about Hutchinson.[4]

After Harrison's complaints to the school board in the Spring of 2016, the School District took a number of actions, including to request that legal counsel "perform a formal investigation" into Plaintiffs' complaints about Hutchinson.[5] In their First Requests for Production of Documents to the School District, Plaintiffs requested the "complete investigative file" regarding Plaintiffs' complaints to the School District in 2015 and 2016.[6] Defendants objected to these requests on multiple grounds, including attorney client privilege and work product protection.

In an effort to resolve the dispute between the parties without the filing of a motion to compel, the Court conducted a discovery status conference with counsel on January 25, 2019. The dispute was not resolved during the conference, but several matters were addressed. The Court noted that Defendants' privilege log was inadequate in that it did not include all of the information required under the well-established law in this district.[7] Defendants indicated that

---

[3] ECF No. 42 at 4, ¶ 25–26.

[4] *Id.* at 5, ¶ 32–33.

[5] *See* ECF No. 102-7 at 19–20.

[6] *See, e.g.*, ECF No. 102-8 at 10, 11, 13.

[7] *See, e.g.*, *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 625809, *2 (D. Kan. Feb. 23, 2007) (listing the requirements for privilege logs pursuant to Fed. R. Civ. P. 26(b)(5)).

they were claiming work product protection for the documents in dispute in addition to the attorney-client privilege, which was the only basis stated in their privilege log for withholding the documents. And, the Court instructed Defendants' counsel to submit the disputed document for *in camera* review.

Defendants served their amended privilege logs on Plaintiffs on March 11, 2019.[8] The School District's privilege log lists "Report of Investigation re Teacher harassment of Students" and indicates the report was prepared May 2016 by Sarah Loquist, staff attorney for the Kansas Association of School Boards and legal counsel for the School District (the "Report"). The privilege log also notes "[t]he report was created during the litigation process and/or prepared in anticipation of litigation and include[s] mental impressions, legal advise (sic), counsel and guidance concerning Plaintiffs' claims against Defendant USD No. 237 and [is] subject to the Attorney-Client Privilege and Work Product protections." On April 18, 2019, Defendants submitted the Report to the Court for *in camera* review. The Report says the purpose of preparation of the document was: "Investigation, analysis and assessing potential legal claims asserted by Plaintiffs against USD No. 237 in anticipation of potential litigation."

The Court has thoroughly reviewed the Report and all briefing filed to date with regard to Plaintiffs' motion to compel[9] and Defendants' motion for protective order.[10] Plaintiffs asserted in their motion to compel that the "School District may very well point to the occurrence of the 2016 investigation as a defense to Plaintiff's claim it was deliberately indifference (sic) to her reports concerning Defendant Hutchinson."[11] Defendants did not address this argument in their

---

[8] The Court was provided a copy of the amended privilege logs on April 12, 2019 pursuant to its April 9, 2019 order (ECF No. 141).

[9] ECF No. 102.

[10] ECF No. 97.

[11] ECF No. 102 at 16.

response. In their reply, Plaintiffs cited several cases and, for the first time, argued that Defendants had waived any privilege as to the Report because they "asserted the occurrence of the 2016 investigation **as a defense to Plaintiff's claims.**"[12] Because Defendants did not have an opportunity to address this argument in their response, the Court allowed Defendants to file a surreply as to this issue,[13] which they filed on April 25, 2019.[14]

Aside from their waiver argument, Plaintiffs contend the Report following the investigation into Plaintiffs' complaints is not privileged and should be produced because the investigation was not done for the purpose of obtaining legal advice but rather pursuant to the School District's policy. In support, they attach the deposition transcript for Ronald M. Meitler, who was the School District superintendent from 2005 to 2017. Meitler testified that the School District engaged the Kansas School Board Association to conduct the investigation into Plaintiffs' complaints and did not engage the association to provide any legal advice.[15]

Defendants argue the investigative report was prepared by attorneys hired by the School District and is therefore protected and not subject to disclosure. They attach several affidavits, which are nearly identical, from several school board members and the Board's attorneys stating the Board believed Plaintiffs' complaints were threatening litigation, and the investigation was conducted for the purpose of obtaining legal advice.[16] They further argue they did not waive any privilege by asserting an affirmative defense to Plaintiffs' claims and that they do not rely on the investigation for their defense.

---

[12] ECF No. 129 at 15 (emphasis in the original).
[13] ECF No. 155.
[14] ECF No. 157.
[15] ECF No. 102-14 at 3–4.
[16] *See* ECF Nos. 136-6, 136-7, 136-8, 136-9, 136-10, 136-11, 136-12, 136-13, 136-14.

4

## II. Legal Standard

"The attorney-client privilege shields from discovery communications between an attorney and client, made in confidence, under circumstances from which it may reasonably be assumed that the communication will remain in confidence."[17] For the privilege to apply, legal advice must predominate. "The privilege does not apply where legal advice is merely incidental to business advice."[18] Underlying facts do not become privileged by relaying them to an attorney.[19] The burden of establishing the applicability of the attorney-client privilege is on the party asserting it.[20] To satisfy this burden, the party "must describe in detail the documents or information sought to be protected and provide precise reasons for the objection to discovery."[21] The party "must also provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied. A blanket claim as to the applicability of the privilege/work product protection does not satisfy the burden of proof."[22]

The standards for evaluating whether a communication is protected by the attorney-client privilege are well established. The essential elements of the privilege are that legal advice of any kind is sought from a professional legal advisor in her capacity as such and communications occur related to that purpose, which are made in confidence by or to the client. Such communications are at the client's instances permanently protected from disclosure by herself or

---

[17] *Olson v. Shawnee Cty. Bd. of Com'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *2 (D. Kan. Mar. 20, 2013) (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

[18] *Wagoner v. Pfizer, Inc.*, No. 07-1229-JTM, 2008 WL 821952, at *3 (D. Kan. Mar. 26, 2008).

[19] *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).

[20] *Id.*

[21] *Lykins v. CertainTeed Corp.*, No. CIV.A. 11-2133-JTM, 2012 WL 3578911, at *8 (D. Kan. Aug. 17, 2012) (quoting *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05–2433–JWL–DJW, 2007 WL 1347754, at *3 (D. Kan. May 8, 2007)).

[22] *Id.*

by the legal advisor, unless the protection is waived.[23] The protection applies to communications with in-house counsel as well as outside attorneys.[24] However, the attorney-client privilege does not protect the disclosure of underlying facts communicated with the attorney.[25]

Although Plaintiffs bring state claims along with their federal claims, federal privilege law applies to all claims.[26] Neither party has argued that the Court should apply Kansas law to this issue, but even if it did, "[w]hether the court applies federal or Kansas law makes no difference in determining whether the attorney-client privilege applies" because "the essential elements of the attorney-client privilege are nearly identical under both Kansas and federal law."[27]

The work product doctrine, embodied in Fed. R. Civ. P. 26(b)(3), "protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial."[28] The work product doctrine

---

[23] *Wagoner*, 2008 WL 821952, at *3.

[24] *Id.*

[25] *Id.*

[26] *See, e.g.*, *Aramburu v. Boeing Co.*, 885 F. Supp. 1434, 1437 n.2 (D. Kan. 1995) (citing *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)), *Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990), and *Wei v. Bodner*, 127 F.R.D. 91, 94 (D.N.J. 1989), aff'd, 983 F.2d 1054 (3d Cir. 1992), all finding that the federal common law of privileges governed. *See also*, *e.g.*, *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1090 (D.N.J. 1996) ("Moreover, '[w]here, as here, there are both federal and state law claims, federal privileges rather than state privileges apply to all claims.'") (quoting *Wei*); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D. Cal. 1978) (finding that Congress did not intend a dual application of state and federal law when both state and federal claims are raised because "[i]f a communication were privileged under state law but not under federal law, or if a communication were privileged under federal law but not under state law, it would be meaningless to hold the communication privileged for one set of claims but not for the other," and absent any indication as to legislative intent in the language or legislative history of Fed R. Evid. 501, "in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation.").

[27] *Sawyer v. Southwest Airlines*, Nos. Civ. A. 01-2385-KHV, Civ. A. 01-2386-KHV, 2002 WL 31928442, at *2 (D. Kan. Dec. 23, 2002). *See also ACE USA v. Union Pacific R. Co. Inc.*, No. 09-2194-KHV-DJW, 2011 WL 2199820, at *2 (D. Kan. June 6, 2011) ("[T]he elements of attorney-client privilege are the same under Kansas law and federal common law."); *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 632 n.1 (D. Kan. 2000) ("There is no real conflict between federal and Kansas law regarding the attorney-client privilege. … Whether the court applies federal or Kansas law generally makes no difference in determining whether the attorney-client privilege applies.").

[28] *Wagoner*, 2008 WL 821952, at *3.

"is not intended to protect investigative work unless done so under the supervision of an attorney in preparation for the real and imminent threat of litigation or trial. Work prepared in the ordinary course of business and inserted into a protected document may still be subject to disclosure after redaction of any privileged material."[29] As with the attorney-client privilege, blanket claims of "work-product protection do not satisfy the objecting party's burden of proof. And an objecting party's failure to meet this burden when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made."[30]

When determining whether a document constitutes work product, the court looks to the primary motivating purpose behind the document's creation.[31] The threat of litigation must be "real and imminent;" even "the likely chance" of litigation does not give rise to work product.[32] The court "generally needs more than mere assertions by the party resisting discovery that the documents or other tangible items were created in anticipation of litigation.[33]

## III. Analysis

### A. Attorney-Client Privilege

The first issue the Court will address is whether the Report is subject to the attorney-client privilege. The parties agree that the Report is relevant.[34] But Defendants argue the Report

---

[29] *Id.*

[30] *Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *3 (D. Kan. Apr. 9, 2012) (quoting *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1267–68 (D. Kan. 2008)).

[31] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007) (quoting *Marten v. Yellow Freight System, Inc.*, No. 96–2013–GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)).

[32] *Id.*

[33] *Id.*

[34] *See* ECF No. 102 at 15 ("The relevancy of witness interviews and findings contained in Defendant's pre-lawsuit investigations are plainly relevant. . ."); ECF No. 135 at 13 ("Defendants have not disputed the relevance of Ms. Loquist's report ("the KASB Report"), but rather that it is protected by the attorney-client privilege and attorney work product doctrine.").

is subject to attorney-client privilege and work product protection and therefore need not be turned over. They also argue Plaintiffs have failed to show that the attorney-client privilege does not apply.[35] However, as discussed above, the party asserting the privilege has the burden to show that it applies.

Plaintiffs contend the privilege does not apply because the investigation was conducted before the lawsuit was filed, the Report contains statements from Plaintiffs, the School District has asked third parties about the investigation throughout discovery, and the School District superintendent testified in his deposition that the investigation was not done to obtain legal advice but was rather conducted in the ordinary course of business per policy.[36]

The Court finds the Report is protected by the attorney-client privilege. The investigation was conducted by an outside (rather than in-house) attorney, Sarah Loquist, retained by the School District. The Report, which was authored by Loquist, constitutes a communication between attorney and client, the School District. The Report includes Loquist's mental impressions and advice to the School District. Defendants also provided an affidavit from Loquist, which states she understood she was being retained as an attorney to assist in investigating, analyzing and assessing Plaintiff's potential legal claims, and that she was to include in the Report her mental impressions and legal advice.[37] Loquist prepared the Report in confidence. She told each witness that the Report would be protected by attorney-client privilege and marked the Report as such.[38] Although the superintendent, Meitler, testified that he engaged the Kansas School Board Association to conduct an investigation and not to provide legal advice,

---

[35] ECF No. 136 at 28.

[36] ECF No. 102 at 17.

[37] ECF No. 136-14 at 2.

[38] *Id.* at 3.

8

and that he did not think the Report contained any legal advice,[39] based upon its *in camera* review, the Court finds the Report does contain legal advice that is not merely incidental to a business purpose. The Court further finds that the essential elements of the attorney-client privilege have been satisfied and the Report is therefore protected by the attorney-client privilege.

The second issue the Court will address is whether Defendants have waived the privilege. The Court finds they have. In the School District's Answer[40] to Plaintiffs' Amended Complaint, it asserts as an affirmative defense that it "exercised reasonable care to prevent and correct promptly any harassing behavior including retaliation; and (b) plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by defendant or to avoid harm otherwise."[41] This language appears to come almost verbatim from *Faragher v. City of Boca Raton*,[42] where the United States Supreme Court held, when no tangible employment action is taken against an employee who creates a hostile environment, the employer may raise an affirmative defense to liability or damages that (a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[43] Examples of tangible employment action include hiring, firing,

---

[39] ECF No. 102-14 at 4, 9.

[40] ECF No. 46.

[41] *Id.* at 23, ¶ 23.

[42] 524 U.S. 775 (1998).

[43] *Id.* at 807.

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.[44]

When a party puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, that party waives any privilege that might otherwise apply to documents concerning the investigation.[45] Courts in this district have found that the party asserting a privilege impliedly waives the privilege through its own affirmative conduct when the party "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[46]

Defendants argue the mere assertion of a *Faragher/Ellerth* defense does not automatically waive the privilege. They contend assertion of this defense waives the privilege only when the defense is based on the reasonableness of an investigation into allegations of discrimination or harassment, which is not the situation here.[47] Instead, they contend the School District was not required to conduct an investigation, Plaintiffs did not request one, and Defendants conducted the investigation only in anticipation of litigation.[48] They claim the investigation, evaluation, and legal advice in the Report "are not part of any affirmative defense

---

[44] *Chapman v. Carmike Cinemas*, No. 08-4043, 2009 WL 57504, at *4 (10th Cir. Jan. 12, 2009) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[45] *See, e.g.*, *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 319 (N.D. Ill. 2010); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. Nov. 1, 2013); *Traversie-Akers v. Sales Operating Servs., Inc.*, No. 08-cv-01206-PAB-MEH, 2009 WL 185594, at *1 (D. Colo. Jan. 26, 2009); *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611–12 (D. Colo 2008); *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006).

[46] *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1104–05 (D. Kan. 2006) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

[47] ECF No. 157 at 2.

[48] *Id.* at 4.

being raised by Defendant USD No. 237 in the case."[49] They go on to say "all personnel actions taken and training provided as a result of Defendant USD No. 237's investigations into Plaintiffs' complaints have already been produced to Plaintiffs in this litigation."[50] Finally, they argue it is Plaintiffs who have put the investigation at issue, not Defendants.[51]

In support, they cite three cases, which are all distinguishable from this case. In *Robinson v. Vineyard Vines, LLC*,[52] the court found the defendant did not waive its privilege by asserting a *Faragher/Ellerth* defense when the defendant conducted an investigation *after* the plaintiff was no longer employed by the defendant and after the plaintiff had begun the litigation process. The defendant indicated it was not relying on the investigation to show it had adopted and the plaintiff failed to take advantage of remedial measures, but rather that she failed to take advantage of the policies already in place during her employment by failing to complain about the sexual harassment until her employment was terminated.[53] In contrast, here Plaintiffs complained to the School District while Doe was still a student at the High School, the School District's investigation took place while Doe was still a student, and Defendants contend they took remedial action *after* and as a result of the investigation.

Similarly, in *Mendez v. Saint Alphonsus Regional Med. Ctr., Inc.*,[54] the court found the defendant did not waive its privilege by asserting a *Faragher/Ellerth* defense because the defendant was not relying on its investigation to show it exercised reasonable care. Rather, the defendant contended the investigation found the actions it took when the plaintiff complained

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] 15 Civ. 4972 (VB)(JCM), 2016 WL 845283 (S.D.N.Y. Mar. 4, 2016).

[53] *Id.* at *5.

[54] No. 1:12–cv–26–EJL–CWD, 2014 WL 3406015 (D. Idaho July 10, 2014).

11

were appropriate.[55] Additionally, the "defense was based on other "mechanisms through which employees [could] report illegal discrimination and harassment."[56] Again, in contrast here Defendants have stated they took appropriate action to address Plaintiffs' complaints *after* and as a result of the School District's investigation.

Finally, in *Crutcher-Sanchez v. County of Dakota, Neb.*,[57] the investigation at issue again was conducted *after* the plaintiff's termination. As discussed above, the investigation here took place while Doe was still a student and before this lawsuit was filed. A key issue in this case is how the School District acted in response to Plaintiffs' complaints. The investigation and thus the Report go to the heart of that issue.

Plaintiffs allege Hutchinson engaged in a pattern of ongoing sexual harassment, which created a hostile educational environment under Title IX. To state a claim under Title IX for a hostile educational environment, Plaintiffs must show the School District "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school."[58] They also allege the School District was negligent in its supervision and retention of Hutchinson under Kansas law, which requires a showing of a causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person.[59] As part of their claim for negligent supervision and retention, Plaintiffs argue the

---

[55] *Id.* at 4.

[56] *Id.*

[57] No. 8:09CV288, 2011 WL 612061 (D. Neb. Feb. 10, 2011).

[58] ECF No. 102 at 10 (citing *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999)).

[59] *Id.* at 12 (citing *Kan. State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 596 (Kan. 1991)).

School District's "conduct was outrageous, shocked the conscience, was deliberately indifferent, wanton and represents reckless disregard for Plaintiff's rights and the rights of other students."[60] In their motion to compel, Plaintiffs left dangling the supposition that the School District might point to the occurrence of the 2016 investigation as a defense to Plaintiffs' deliberate indifference claim.[61] When Defendants did not respond to this and Plaintiffs added the privilege waiver argument in their reply, the Court entered an order allowing Defendants an opportunity to file a surreply to address the deliberate indifference issue and privilege waiver arguments.[62] Yet, throughout their subsequently-filed surreply, Defendants never address Plaintiffs' deliberate indifference claim or concede that they do not intend to use the Report or investigation to defend it.

As previously noted, "Defendants have not disputed the relevance of Ms. Loquist's report."[63] And, Defendants responded to Plaintiffs' interrogatory requesting information about the investigation the School District conducted into Plaintiffs' complaints that Hutchinson was harassing Doe by stating "[a] Personnel Conference was held with Defendant Hutchinson following the conclusion of the investigation."[64] Defendants state they took personnel action and provided training "as a result of" the investigation.[65] Moreover, Defendants acknowledge the School District has "already produced the non-privileged documents relating to its investigation

---

[60] ECF No. 42 at 20, ¶ 139.

[61] ECF No. 102 at 16.

[62] ECF No. 155.

[63] ECF No. 135 at 13.

[64] ECF No. 102-7 at 20. The entirety of this interrogatory response makes clear that the referenced personnel conference was conducted at the conclusion of the investigation performed by Loquist in the spring of 2016.

[65] ECF No. 157 at 4.

13

into Plaintiffs' complaints *and the corrective action taken against Defendant Hutchinson as a result of that investigation.*"[66]

Defendants have asserted the *Faragher/Ellerth* defense and rely upon their investigation and Report to show that they "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." In other words, Defendants seek to use the investigation and Report to support their defense that they took corrective action in response (*i.e.* that they were not deliberately indifferent) to Plaintiffs' complaints, while at the same time invoking the privilege to deny Plaintiffs access to the Report to determine how Defendants' corrective action compares to Loquist's recommendations. But this is precisely the sword and shield approach that the courts have rejected.[67] To allow the privilege to protect against disclosure of the Report under these circumstances would be manifestly unfair to the opposing parties. Plaintiffs are entitled to discover the substance of the investigation and determine its sufficiency. "Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy."[68] Whether the School District acted reasonably will depend at least in part on the recommendations and advice it received in the Report from Loquist following her investigation.[69] "Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over the documents related to that

---

[66] ECF No. 135 at 13 (emphasis added).

[67] *See, e.g.*, *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 633 (D. Kan. 2000) ("To be sure, there is authority that attorney-client communications cannot be used both as a sword and a shield, i.e., when a party defends the conduct which is the subject of the suit by relying on advice of counsel.").

[68] *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1097 (D.N.J. 1996).

[69] *See Johnson v. Rauland-Borg. Corp.*, 961 F. Supp. 208, 211 (N.D. Ill. 1997).

investigation, even if they would ordinarily be privileged."[70] The Court concludes Defendants have waived any privilege that might otherwise apply to the Report.

To the extent Defendants argue they do not intend to affirmatively rely on the Report itself but rather the corrective actions taken, that argument "misses the point."[71] Plaintiffs are entitled to all documents reflecting the School District's investigation into their complaints and its remedial response, not only the documents Defendants think support their cause.[72]

Finally, Defendants acknowledge courts in this district have generally followed the *Hearn v. Rhay*[73] test when determining "at-issue waiver."[74] Although neither Kansas nor the Tenth Circuit has adopted a definitive approach to determining at-issue waiver, courts in this district have followed the *Hearn* test.[75] Under the Hearn test, each of the following three conditions must exist to find waiver: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.[76] A court should find that the party asserting a privilege has impliedly waived that privilege through its own affirmative conduct when the party "places information protected by it

---

[70] *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (citations omitted).

[71] *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 319 (N.D. Ill. 2010).

[72] *Id.*

[73] 68 F.R.D. 574 (E.D. Wash. 1975).

[74] ECF No. 157 at 4–5.

[75] *See, e.g.*, *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100 (D. Kan. 2006); *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625 (D. Kan. 2000); *Rahn v. Junction City Foundry, Inc.*, No. CIV.A. 00–2128–KHV, 2000 WL 1679419 (D. Kan. Nov. 3, 2000).

[76] *Hearn*, 68 F.R.D. at 581.

in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[77]

In considering these factors, the Court again finds Defendants put the investigation, and therefore the Report, at issue by asserting the defense that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior,"[78] took action (through a "personnel conference") against Hutchinson after the investigation,[79] and took other "personnel actions," including by providing training, as a result of the investigation.[80]

Other courts have found that "where the affirmative defense is asserted, attorney-client and work product privileges may be waived if they are being used to shield information regarding an investigation or *remedial efforts that the Defense has put at issue* through the assertion of this defense."[81] Here, Defendants have put at issue the actions they took "as a result of" the investigation. Defendants have provided Plaintiffs documents regarding their remedial measures. "Not allowing Plaintiffs to inquire into how thorough or complete Defendants' investigation and remediation were before trial commences would put Plaintiffs at a distinct disadvantage."[82] The investigation and remedial efforts are central to the litigation. "If the investigation *or its results* is to be used as evidence at trial, then clearly the privilege which it enjoys would be waived. One cannot assert the attorney/client privilege to keep an opponent from discovering facts about an investigation when the investigation is to be used at trial as a

---

[77] *Id.*

[78] ECF No. 46 at 23, ¶ 23.

[79] ECF No. 102-7 at 20.

[80] ECF No. 157 at 4.

[81] *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 WL 2401270, at *4 (W.D. Wash. Aug. 18, 2006) (emphasis added).

[82] *Id.*

16

defense to defeat the opponent's allegations."[83] The only way Plaintiffs, or the finder of fact, can determine the reasonableness of the School District's investigation "is through full disclosure of the contents thereof."[84]

Defendants have acknowledged that the Report is relevant.[85] And, applying the privilege to the Report would deny Plaintiffs access to information that is vital to their claim, specifically that the School District knew Hutchinson had sexually harassed students and continued to sexually harass Doe, but with deliberate indifference failed to take appropriate action to protect the students. Defendants attempt to rely on the investigation as evidence that it took subsequent action and provided training. But without the Report, Plaintiffs are unable to discover whether the action taken was sufficient or appropriate. Therefore, the Court finds Defendants have waived their attorney-client privilege with respect to the Report and the content of the investigation into Plaintiffs' complaints.

### B. Work Product Protection

Although Defendants' initial privilege log claimed only attorney-client privilege, their amended privilege logs and objections to Plaintiffs' discovery requests also assert work product protection. The Court therefore also considers whether the Report should be protected from disclosure on that basis. Defendants argue the Report is entitled to work product protection because the investigation was completed in anticipation of litigation. Plaintiffs contend the investigation was completed per policy and not in anticipation of litigation. The Court finds

---

[83] *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 318 (N.D. Ill. 2010) (emphasis added) (quoting *Fultz v. Fed. Sign*, No. 94 C 1931, 1995 WL 76874 at * 2 (N.D. Ill. 1995)).

[84] *Id.* at 319 (quoting *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999)).

[85] ECF No. 135 at 13.

17

Defendants have not met their burden to establish work product protection, and even if they had, they have waived any such protection for the reasons previously discussed.

Upon review of the Report, there is no mention in its entirety of any threat of litigation or of any litigation, ongoing, imminent or otherwise. Defendants argue Harrison was in contact with an attorney at the time the investigation took place and thereafter — May 2016. But the investigation was to comprise Plaintiffs' complaints dating back to January 2015. And, simply being in contact with an attorney does not imply litigation is imminent. Even "the likely chance" of litigation does not give rise to work product.[86]

Although the affidavits Defendants attach to their response to Plaintiffs' motion to compel indicate the investigation was done "in anticipation of potential litigation,"[87] the Court finds this to be a "blanket claim" and therefore insufficient to satisfy Defendants' burden of proof.[88] Nowhere do Defendants assert that Plaintiffs actually threatened litigation. Nothing in the record supports the assertion that litigation was imminent. No mention of litigation is included in the Report. Harrison's deposition testimony attached to Defendants' response to Plaintiffs' motion to compel only indicates she had been in communication with an attorney, who was her friend.[89] After review of the Report, it is still unclear when Harrison threatened litigation and how. It is unclear that Harrison's attorney friend was representing her,[90] and even if he were, simply being represented by an attorney does not mean litigation is imminent.

---

[86] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007) (quoting *Marten v. Yellow Freight System, Inc.*, No. 96–2013–GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998)).

[87] *See, e.g.*, ECF No. 136-14 at 2, ¶ 11.

[88] *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007) (citing *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000)).

[89] *See* ECF No. 136-16 at 3–4 (Harrison testified that she copied an attorney on her email to the principal on May 11, 2016 so her email "would be taken more seriously at the school.").

[90] *Id.* at 4 (Harrison testified she didn't know if he was "representing [her] necessarily" and that her purpose of copying him on her email to the principal was to "give the e-mail more weight.").

Further, the case was filed in December 2016, seven months after the investigation and nearly two years after Plaintiffs' first complaints about Hutchinson's conduct. Defendants have thus failed to meet the burden to show the Report was prepared in anticipation of litigation.

But even if it were, Defendants also waive this protection by asserting the *Faragher/Ellerth* affirmative defense for the reasons discussed above.[91] Therefore, the Court finds that the Report is discoverable and not subject to production from the work product doctrine.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Compel regarding disclosure of the 2016 investigative report is granted. Defendants shall produce the Report in its entirety.

**IT IS SO ORDERED.**

Dated April 30, 2019, at Kansas City, Kansas.

*[signature: Teresa J. James]*

Teresa J. James
U. S. Magistrate Judge

---

[91] *See, e.g.*, *E.E.O.C. v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611–12 (D. Colo 2008) (finding waiver of the attorney-client privilege and work product doctrine regarding investigations into complaints after the defendants asserted the *Faragher/Ellerth* defense); *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation" into the plaintiff's complaints, "they waive the attorney-client privilege and work product doctrine with respect to documents reflecting that investigation.").