**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JANE DOE, and ANGELA HARRISON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-2801-JWL-TJJ |
| | ) | |
| USD No. 237, THE SMITH CENTER SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Unified School District No. 237's Response to the Court's Memorandum and Order (ECF No. 189).[1] The matter is fully briefed and the Court is ready to rule. For the reasons discussed below, the Court denies the relief requested in the Response and once again orders Unified School District No. 237 to produce its May 2016 pre-suit investigative report.

## I. Background

The Court has set out the factual background of this case in considerable detail in prior orders and will not do so again here.[2] The Court previously concluded that Unified School District No. 237 ("the School District") had waived its attorney-client privilege and ordered it to produce the May 2016 pre-suit investigative report that is the subject of this order ("the Report") in its entirety.[3] The School District filed an objection to this Court's ruling, which District Judge Lungstrum overruled in the June 26, 2019 Memorandum and Order (the "Order")[4] that elicited

---

[1] ECF No. 190.

[2] *See* ECF Nos. 143, 160, 189.

[3] ECF No. 160.

[4] ECF No. 189.

the Response filed by the School District at issue here.[5] The Order also directed the School District to produce the Report to Plaintiff or "file a motion for leave to amend its answer to [withdraw or limit the application of its *Faragher* defense], in which defendant should explain why its limitation or withdrawal means that the privilege should not be deemed waived with respect to the report."[6] In addition, the Order directed that any such motion should address whether the Report contains any matter not covered by the attorney-client privilege and "the extent to which the privilege could again be waived if defendant at trial were to rely on its investigation or its actions based on the investigation in defending against plaintiffs' affirmative claim that defendant acted with deliberate indifference."[7] The Order concluded with the following directive: "By July 5, 2019, [the School District] shall produce the report at issue to plaintiff or file a motion as described herein."[8]

Before the Order was entered, the Court (that is, the undersigned magistrate judge) conducted a pretrial conference with the parties, on June 20, 2019. During the conference, the Court discussed the parties' proposed pretrial order with them in detail and requested the parties make several changes to the order. In accordance with the Court's instructions, the parties did not return the revised proposed pretrial order for filing until July 8, 2019. In the interim, Judge Lungstrum entered the above-described Order. Also in the interim, on July 5, 2019, the School District filed its Response to the Order, stating it "withdraws the [*Faragher*] affirmative defense raised in its Answer," and that it would not include this affirmative defense in the pretrial order

[5] ECF No. 190.

[6] ECF No. 189 at 13.

[7] *Id.*

[8] *Id.*

to be submitted on July 8, 2019.[9] In the revised proposed pretrial order returned by the parties for filing on July 8, the School District removed the *Faragher* defense from its list of defenses.[10]

## II. Analysis

The Order required if the School District elected not to produce the Report to Plaintiffs, it must: (1) file a motion for leave to amend its answer to withdraw or limit the application of its *Faragher* defense; (2) explain in the motion why its limitation or withdrawal means that the privilege should not be deemed waived with respect to the Report; (3) address in the motion whether the Report contains any matter not covered by the attorney-client privilege, and (4) address in the motion the extent to which the privilege could again be waived if the School District at trial were to rely on its investigation or its actions based on the investigation in defending against Plaintiffs' affirmative claim that the School District acted with deliberate indifference. The Court discusses each of these requirements in turn below.

### A. The School District failed to file a motion for leave to amend in accordance with the Order. [11]

The School District does not request leave to amend or discuss at all the requirements for amending pleadings in its Response; rather, it simply states in the Response that it "withdraws" its *Faragher* defense.[12] Plaintiffs filed a brief in opposition,[13] arguing that the School District failed to file a motion for leave to amend in compliance with the Order and instead improperly presumes leave has been granted. Plaintiffs argue even if the response is considered a motion to

---

[9] ECF No. 190 at 1.

[10] *See* ECF No. 192.

[11] To be consistent with Judge Lungstrum's Order (ECF No. 189), the Court instructed the Clerk to reference the School District's Response in the docket as a Motion for Leave to Amend its Answer. The Court discusses the implications of the School District's filing its Response rather than a motion in more detail below.

[12] ECF No. 190 at 1.

[13] ECF No. 205.

amend the answer, the motion should be denied because the School District has not shown good cause for the amendment, pursuant to Fed. R. Civ. P. 16(b), and because of the School District's undue delay, undue prejudice to Plaintiffs, bad faith and/or dilatory motive of the School District, or futility of amendment, pursuant to Fed. R. Civ. P. 15(a).

In its Reply, the School District argues it is not entirely clear that the Federal Rules of Civil Procedure or applicable case law require filing of a motion or an order granting leave to *withdraw* a claim or defense, "particularly at the pretrial stage where all such amendments are reflected in the subsequently entered Pretrial Order."[14] It notes that Plaintiffs withdrew certain previously asserted claims and the Defendants withdrew several affirmative defenses in addition to the one at issue here, by simply not including them in the Pretrial Order in this case.[15] The School District argues to the extent Rule 15 is applicable, leave of court still was not required because the parties consented to such amendments in writing by submission of their jointly proposed pretrial order. Finally, it argues if the Court concludes the *Faragher* defense was not properly withdrawn and that leave of Court is required, the Court should "freely grant" such leave pursuant to Rule 15(a)(2) or 16(c)(2) and (d).

The Court finds that Judge Lungstrum's Order is clear and unambiguous. It explicitly ordered the School District, by July 5, 2019, to either produce the Report to Plaintiffs or file a motion for leave to amend its answer to withdraw or limit the application of its *Faragher* defense. The School District did neither. Instead, it filed a "Response" to the Order (even though there is no rule, federal, local, or otherwise, that provides for a response to such an Order), stating that it "withdraws the [*Faragher*] affirmative defense raised in its Answer." This was

---

[14] ECF No. 210 at 3.

[15] *Id.* at 4.

both presumptuous and clearly not in compliance with the Order, which contemplated that the School District must file a motion *requesting* leave to withdraw or limit its *Faragher* defense.

The School District is correct that a number of Plaintiffs' claims and Defendants' defenses, aside from the one at issue here, were simply not included by the parties in the Pretrial Order and thus were withdrawn. It is also true that it is not uncommon for parties to remove and withdraw claims or defenses at the time of pretrial from the pretrial order without filing motions to amend, *when there is no objection or dispute over the claim or defense being withdrawn*. But that is not the case here, where the defense at issue is and was at the time of the pretrial conference and entry of the Pretrial Order the subject of a major dispute between the parties. The Court rejects the School District's argument that because "Plaintiffs' counsel did not object and, instead, agreed to the proposed pretrial order submitted to the Court on July 8, 2019," Plaintiffs necessarily did not object to the School District's purported withdrawal of the *Faragher* defense without a motion for leave to amend. At the time of the pretrial conference, the Order had not been entered, so Plaintiffs clearly did not agree during the conference that the School District could withdraw its *Faragher* defense from the proposed pretrial order in lieu of complying with the Order. With regard to the parties' subsequent submission of their revised proposed pretrial order, they complied with the Court's instructions at the conclusion of the pretrial conference to jointly submit the revised document by July 8, 2019. The Court does not find that Plaintiffs' compliance with the Court's instructions constitutes their agreement with the School District's position that it could withdraw the *Faragher* defense without filing a motion as directed in the Order.

The Court finds that under the specific facts of this case, the School District should have filed a motion for leave to amend. Its Response does not request leave to amend or address the

issue at all. And, the Court will not consider the arguments on this issue raised by the School District for the first time in its Reply.[16] The Court therefore also finds that the School District has not satisfied the requirements of Rule 15 or 16 to amend its answer to withdraw the *Faragher* defense. Finally, the Court finds, in accordance with Rule 1 and in the interest of judicial economy, that the School District should not be allowed to amend to withdraw the defense given (a) the Court's ultimate conclusion below that the School District has waived its *Faragher* defense, despite its purported withdrawal of the defense, and must produce the privileged document at issue (the Report); and (b) the School District's expressed intent to reserve its "right to seek leave to amend and reassert [the *Faragher*] affirmative defense should the Court order the privileged document at issue . . . produced…."[17]

**B. The School District has not provided a compelling explanation for why its purported withdrawal of the *Faragher* defense means that the privilege should not be deemed waived with respect to the Report.**

As noted above, the Order directed that if the School District chose to withdraw or limit application of its *Faragher* defense, it "should explain why its limitation or withdrawal means that the privilege should not be deemed waived with respect to the Report." The School District's Response offers two such explanations. Even though the Court has found the School District has not properly moved for leave to amend its answer, the Order contemplates that the Court address the remaining issues raised in the Order. Thus, the Court considers now whether the "purported" withdrawal of the *Faragher* defense means the privilege should not be deemed waived.

[16] *See, e.g.*, *Martinez v. Kansas*, No. 05-3415-MLB, 2006 WL 3350653, at *2 (D. Kan. Nov. 17, 2006) ("It is well settled in this circuit that the court need not consider arguments or issues first raised in a reply brief.").

[17] ECF No. 190 at 1 n.1.

1. The six cases cited by the School District are not supportive of its position.

First, the School District provides a string citation of six cases with a brief quote or parenthetical statement regarding each case.[18] However, the School District does not include any discussion of the underlying facts or any discussion regarding how the cited cases relate to this case. As discussed below, in four of the cited cases, the defendants had not withdrawn the affirmative defense at issue, so the courts did not address the issue presented here. None of the cited cases provides the explanation the School District desires as to why the withdrawal of its *Faragher* defense means that the privilege should not be deemed waived with respect to the Report.[19] And, two of the cases, *Pollitt* and *Robinson*, cut against the School District's position here.

In *Koumoulis*, the court noted in *dicta* the general principal that "a party may withdraw a claim or defense in order to preserve a privilege that would otherwise be forfeited."[20] But, the defendants had not sought to withdraw their *Faragher* defense, so the court had no reason to address and did not address the issue presented here – namely, why (or whether) the withdrawal of the defense meant the privilege should not be deemed waived with respect to the privileged document or material at issue.[21] Similarly, in *Nelson*, the court stated the defendant would need to seek leave to amend its pleadings to eliminate its affirmative defense; however, the defendant

[18] *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 42 (E.D.N.Y. 2013); *Nelson v. Sabre Cos., LLC*, No. 1:15-cv-00314 (BKS/TWD), 2018 WL 4030533, at *4 (N.D.N.Y. July 9, 2018); *Edwards v. KB Home*, No. 3:11-CV-00240, 2015 WL 4430998, at *3 (S.D. Tex. July 18, 2015); *Sealy v. Gruntal & Co.*, No. 94Civ.7948(KTD)(MHD), 1998 WL 698257, at *5 (S.D.N.Y. Oct. 7, 1998); *Pollitt v. North Carolina Prisoner Legal Servs., Inc.*, No. 5:05-CV-220-BO, 2006 WL 8438635, at *2 (E.D.N.C. Sept. 22, 2006) (citing *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 146–47 (S.D.N.Y. 2013)).

[19] Additionally, none of the cited cases are District of Kansas or Tenth Circuit cases binding upon this Court.

[20] *Koumoulis*, 295 F.R.D. at 42.

[21] *Id*. at 48 (noting "Defendants would need to choose whether to assert the affirmative defense or the privilege, but could not preserve both by selectively omitting certain communications.").

had not yet requested leave to amend and thus the issue presented in this case had not yet been presented to the court.[22]

The issue before the court in *Edwards,* a Fair Labor Standards Act (FLSA) case, was whether the defendant waived its privilege with regard to attorney-client communications concerning its classification of exempt outside salespeople by asserting good faith defenses.[23] The court concluded that the defendant *had* waived its privilege, subject to certain specified exceptions. Recognizing the "line-drawing" challenges this might create, the court noted in *dicta* that the defendant "might elect to withdraw its good faith defenses, in which case the privilege would still attach."[24] But, again, the defendant in *Edwards* had not attempted to withdraw its good faith affirmative defenses and that issue was not before the court.

Again in *Sealy*, the defendants had not withdrawn or requested to withdraw their affirmative defense; rather, the court noted the defendants had not been entirely clear that they were dropping the *Faragher* defense.[25] The court opined that if the defendants intended to put on testimony that placed in issue the substance of the communications made as part of their investigation, then the plaintiff would be entitled to the documentation prepared by all participants to the interviews, because those documents might shed additional light on the thoroughness of the interviews and the nature of the information unearthed by the interviewer.[26] The court ordered defendants to either "unambiguously" withdraw the defense or produce the requested documents within seven days.[27]

---

[22] *Nelson*, 2018 WL 4030533, at *4.

[23] *Edwards*, 2015 WL 4430998, at *3.

[24] *Id*.

[25] Sealy, 1998 WL 698257, at *5.

[26] *Id.*

[27] *Id.* at *6.

In *Pollitt* and *Robinson*, the defendants did stipulate that they would not rely upon their investigations as defenses. The School District relies upon these cases for the proposition that, "Where employers disavow reliance upon their *investigations* as a defense, the attorney-client privilege is not waived."[28] But, unlike the defendants in *Pollitt* and *Robinson*, the School District purports to withdraw its *Faragher* defense but does not disavow reliance upon its investigation. To the contrary, in its factual contentions in the Pretrial Order, the School District references Plaintiff Harrison's complaints regarding Hutchinson's behavior, including a May 11, 2016 email to the school principal, after which, "[The School District] issued a written reprimand to Hutchinson."[29] The written reprimand states that the administration was made aware of several concerns involving Hutchinson on or about May 11, 2016, which resulted in an investigation into the allegations.[30] The written reprimand notes that the School District requested that an attorney, Sara Loquist, investigate these concerns.[31] The written reprimand mentions the investigation repeatedly, references certain findings of the investigation, and makes recommendations and issues directives to Hutchinson, "[b]ased upon information obtained during the course of the investigation."[32] The School District's contentions in the Pretrial Order indicate its intent to rely

[28] ECF No. 190 at 2, *citing Pollitt*, 187 F.R.D 144 at 146–47 and quoting *Robinson*, 2006 WL 8438635, at *2 (emphasis added). In *Pollitt,* the defendants stipulated they would not rely on the *Faragher* defense "at all" and agreed to stipulate that they would not plead and thus put at issue their good faith defense as to the adequacy of their investigation into retaliation claims or to the plaintiff's failure to bring any such allegation to the defendant's attention. In *Robinson*, defendant Time Warner "explicitly confirmed" it would not rely upon the investigation at issue as a defense except as necessary to rebut the plaintiff's assertion that the lawyer investigator told plaintiff that he ultimately found the plaintiff was discriminated against.

[29] Pretrial Order (ECF No. 192 at 10). The School District was very intentional in removing its *Faragher* defense from the Pretrial Order and relies upon that deletion as its withdrawal of the defense. That the School District did not also remove the factual contention regarding its written reprimand to Hutchinson from the Pretrial Order is significant. The Pretrial Order clearly indicates the School District's intent to continue to rely upon its investigation even though it purports to withdraw the *Faragher* defense.

[30] ECF No. 183-1 at 1.

[31] *Id.*

[32] *Id.*

upon the investigation of Plaintiffs' complaints conducted by its attorney and her recommendations and findings. The Report at issue is the report of the School District's attorney regarding this investigation.

The School District's reliance on the written reprimand and hence its attorney's investigation and Report is a point of emphasis in Plaintiffs' Opposition. Plaintiffs argue that the "School District continues to rely upon a reprimand issued to Defendant Hutchinson prompted by the *investigation at issue*."[33] They note that the School District "continues to rely upon a reprimand **that spells out the details of the investigation as a justification for the reprimand**."[34] They argue with regard to deliberate indifference that, "by producing the reprimand – which refers to and references the investigative report – [the School District] has waived privilege as it specifically references the investigation as the basis for its conclusion substantiating Plaintiffs' report."[35] Finally, Plaintiffs point out that the School District argues in its pending motion for summary judgment that "Hutchinson was disciplined as a result of the determination made by [the School District] that he had engaged in unprofessional verbal discussions with students during the school day. . ."[36]

Plaintiffs' argument is compelling; the School District relies upon the reprimand in its summary judgment briefing and in its contentions in the Pretrial Order. Despite Plaintiffs' emphasis in its opposition on the School District's reliance on the reprimand given to Hutchinson

[33] ECF No. 205 at 1 (emphasis in original).

[34] *Id.* at 4 (emphasis in original).

[35] *Id.* at 7–8.

[36] *Id.* at 8 (quoting ECF No. 203 at 63). This description of the misconduct for which Hutchinson was disciplined (engaging in "unprofessional verbal discussions with students during the school day") is virtually identical to language contained in the written reprimand ("The investigation found Mr. Hutchinson engaged in unprofessional verbal discussions with students during the school day.") The written reprimand recommended that Hutchinson be given a list of directives "[b]ased upon the information obtained during the course of the investigation." (ECF No. 183-1 at 1).

and by extension the investigation and Report that resulted in the reprimand, the School District does not address the reprimand at all in its reply. The Court finds the School District has not disavowed reliance on its attorney's investigation as a defense; instead, it continues to rely upon it.

In addition, although the School District relies upon its removal of the *Faragher* defense from its list of defenses in the Pretrial Order as its withdrawal of the defense, at the same time it left "in" its factual contentions in the Pretrial Order the following:

> [The School District] issued a written reprimand to Hutchinson. Plaintiffs elected to enroll Jane Doe in Hutchinson's class for the 2016-17 school year and rejected [the School District's] offer to move her to a different class. Plaintiffs did not report any alleged inappropriate behavior by Hutchinson during the fall of 2016. Jane Doe was voluntarily withdrawn from [the School District] in October 2016 and enrolled in a neighboring school district where she graduated in May of 2017.[37]

The Court has compared the above factual contention from the Pretrial Order to the *Faragher* defense language that the School District removed from the Pretrial Order.[38] The factual contention tracks the purportedly withdrawn two-pronged *Faragher* defense: The contention states that the School District issued a written reprimand to Hutchinson (which indicates it stems from the investigation and recommendations of the School District's lawyer). This appears to be essentially the "exercised reasonable care to prevent and correct promptly any harassing behavior including retaliation" prong of the *Faragher* defense; and (b) The contention states that Plaintiffs elected to keep Plaintiff Jane Doe in Hutchinson's class and rejected the School District's offer to move her to a different class. This appears to be essentially the

[37] Pretrial Order, ECF No. 192 at 10.

[38] ECF No. 190 at 1 ("[The School District] exercised reasonable care to prevent and correct promptly any harassing behavior including retaliation; and (b) plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the School District] or to avoid harm otherwise.").

"plaintiffs unreasonably failed to take advantage of preventive or corrective opportunities provided by the School District or to avoid harm otherwise" prong of the *Faragher* defense. Thus, even though it removed the *Faragher* defense from its list of defenses in the Pretrial Order and it purports to withdraw the defense by name, the Court finds the School District has not unambiguously withdrawn the defense[39] and instead appears to continue to implicitly rely upon it.

The court made another important point in the *Edwards* case, discussed above and cited by the School District, which is also significant here.[40] It recognized that drawing a distinction between a good faith defense relying on advice of counsel and one that does not, even though such advice was given, would essentially result in a good faith defense never resulting in waiver of adverse legal advice.[41]

> "This 'heads I win, tails you lose' result—in which a party asserting good faith could use attorney communications that help its cause, but shield the communications when they do not by characterizing the defense as one that does not rely on advice of counsel—would undo, and is at odds with the fairness concerns that animate, the longstanding recognition that asserting a claim or defense that depends on a belief in the lawfulness of one's conduct waives privilege."[42]

---

[39] *Sealy v. Gruntal & Co.*, No. 94Civ.7948(KTD)(MHD), 1998 WL 698257, at *6 (S.D.N.Y. Oct. 7, 1998) (finding if the defendants do not "unambiguously" withdraw their defense, they must provide the requested documents to the plaintiff).

[40] *Edwards v. KB Home*, No. 3:11-CV-00240, 2015 WL 4430998 (S.D. Tex. July 18, 2015).

[41] *Id.* at *3. The court posed a hypothetical in which a human resources director forms a conclusion that certain employees can be classified as exempt under the FLSA. She then consults a lawyer who confirms that the classification is correct. Then the party asserts a good faith defense in reliance upon that advice of counsel and uses the lawyer's comments as support. But if the answer conflicts with the earlier classification decision, then the party can attempt to maintain privilege over that conflicting legal advice by invoking a good faith defense that does not assert the advice of counsel as a defense.

[42] *Id.*

In *Koumoulis,* also discussed above and cited by the School District, the court raised a similar "shield and sword" concern, stating:

> Both the attorney-client and work-product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim or defense. Such a waiver 'may be implied in circumstances where it is called for in the interests of fairness,' (citation omitted) such as when a 'party attempts to use the privilege both as a shield and a sword,'(citations omitted). 'In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.'[43]

This Court stated a similar concern in its April 30, 2019 order finding that the School District had waived its attorney-client privilege with regard to the Report.[44] The School District's purported withdrawal of its *Faragher* defense does not alleviate the Court's concerns. The School District is attempting to use its investigation and the privileged communications of its attorney-investigator as a sword to defend against Plaintiffs' claims through its reliance on the written reprimand to Hutchinson but then to shield the underlying communication from scrutiny by Plaintiffs. Simply put, the School District argues that it reprimanded Hutchinson in accordance with the advice of its counsel but would deny Plaintiffs access to what information the attorney-investigator uncovered during the investigation and what other recommendations the

---

[43]*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013).

[44] ECF No. 160 (citing *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 633 (D. Kan. 2000) ("To be sure, there is authority that attorney-client communications cannot be used both as a sword and a shield, i.e., when a party defends the conduct which is the subject of the suit by relying on advice of counsel."). *See also Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1104–05 (D. Kan. 2006) ("A court, then, should find that the party asserting a privilege has impliedly waived that privilege though his own affirmative conduct when the party places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party.") (internal quotation omitted).

attorney-investigator may have made to the School District that it may or may not have followed. This would be manifestly unfair to Plaintiffs.[45]

2. The School District's implied waiver argument is not persuasive.

The School District makes a second brief argument regarding why its withdrawal of the *Faragher* defense means that the privilege should not be deemed waived with respect to the Report. It argues that, given the importance of the attorney-client privilege, "the court should temper a finding of implied waiver by permitting the party to make the conscious decision to alternatively withdraw the claim or defense, thereby keeping the privilege…."[46] It contends such a balance would be in the interests of justice.[47] But, as indicated by the "sword and shield" and related discussion above, the Court does not agree that the School District's purported withdrawal of the *Faragher* defense would be in the interests of justice. The School District cites no authority for its argument and, without minimizing the importance of the attorney-client privilege, the Court finds the argument unpersuasive.

The Order concluded that the School District had waived its privilege and placed the burden on the School District to explain why its withdrawal of the *Faragher* defense means that the privilege should not be deemed waived with respect to the Report.[48] For the reasons discussed above, the Court finds the School District has not explained why its purported

---

[45] The Court is also troubled with the timing of the School District's purported withdrawal of the *Faragher* defense. The School District could have withdrawn this defense any time after Plaintiffs filed their motion to compel production of the Report on February 22, 2019 (ECF No. 102) and raised the non-waiver argument at that time. Instead, Defendant waited until after the close of discovery and entry of the Pretrial Order. Because the School District takes the position that it could withdraw this defense in the Pretrial Order without filing a motion for leave to amend as instructed, the School District has not addressed the issues of undue prejudice and delay asserted by the Plaintiffs and pertinent to a motion for leave to amend at this late stage.

[46] ECF No. 190 at 2.

[47] *Id.* at 3.

[48] ECF No. 189.

withdrawal of the *Faragher* defense means that the privilege should not be deemed waived with respect to the Report. Therefore, the Court finds the privilege with respect to the Report is waived *notwithstanding* the School District's purported withdrawal of the *Faragher* defense.

**C. The Report contains certain matter not covered by the attorney-client privilege.**

The Order directed the School District to also address whether the Report contains any matter not covered by the attorney-client privilege, which portions would then be produced to Plaintiffs regardless of whether the waiver still applies. The School District takes the position that the Report is covered by the attorney client privilege in its entirety. It argues that the Report is clearly a communication by an attorney to her client and that all of the information contained in it, including the underlying facts of the investigation, are intertwined with the attorney's mental impressions.[49] And, "where the communication contains inextricably intertwined facts and legal advice, the attorney-client privilege applies."[50] The School District claims opposing counsel has equal access to the witnesses and documents at issue and does not need the benefit of the School District's counsel's interpretation of them, and that its counsel believed the Report she was preparing was protected by the attorney-client privilege.[51] The School District acknowledges that "a client cannot conceal a fact by disclosing it to his attorney."[52] But it also argues that information as to what witnesses its counsel spoke to and what those witnesses said

---

[49] ECF No. 190 at 4–5.

[50] *Id.* at 4, quoting *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192885, at *6 (D. Kan. July 25, 2007) (citing *SEC v. Brady*, 238 F.R.D. 429, 438-39 (N.D.Tex.2006) and *Florentia Contracting Corp. v. Resolution Trust Corp.*, No. 92 Civ. 1188(PKL), 1993 WL 127187, at *6–7 (S.D.N.Y. Apr. 22, 1993)).

[51] *Id.* at 5.

[52] ECF No. 210 at 8 (*citing Upjohn Co. v. U.S.* 449 U.S. 383, 395–96 (1981)).

"is precisely the type of information [Plaintiffs] are not entitled to obtain from a communication between the School District and its counsel."[53]

As noted in the Order, the undersigned magistrate judge did not rule on this issue in her prior ruling because she found that the School District had waived the privilege and therefore had no reason to consider whether there were any portions of the Report not covered by the privilege. Although the Court finds once again in this order that the privilege is waived, the Court now does consider the issue of whether any portion of the Report is not privileged, in order to provide a complete record for if/when the School District seeks review of this order.

The Court has reviewed the Report *in camera*. Based upon its review, the Court disagrees with the School District's claim that the facts and legal advice contained in the Report are "inextricably intertwined." Rather, the Report includes a "Witness Key," listing the witnesses contacted; a section labeled "Witness Interviews Regarding Allegations" with summaries of the witness interviews, which appears to be the lawyer's objective factual summary of each witness interviewed; and separate sections labeled "Findings" and "Recommendations," which appear to include the lawyer's mental impressions.

"The attorney-client privilege shields from discovery communications between an attorney and client, made in confidence, under circumstances from which it may reasonably be assumed that the communication will remain in confidence."[54] For the privilege to apply, legal advice must predominate. "The privilege does not apply where legal advice is merely incidental to business advice."[55] Underlying facts do not become privileged by relaying them to an

---

[53] *Id.* at 8 (citing *Upjohn*, 449 U.S. at 396).

[54] *Olson v. Shawnee Cty. Bd. of Com'rs*, No. 12-2084-JTM-KGG, 2013 WL 1151481, at *2 (D. Kan. Mar. 20, 2013) (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006)).

[55] *Wagoner v. Pfizer, Inc.*, No. 07-1229-JTM, 2008 WL 821952, at *3 (D. Kan. Mar. 26, 2008).

attorney.[56] Additionally, any party "may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter."[57]

In the Report, the School District's attorney separated her objective factual summaries of her witness interviews from her mental impressions and assessments of those witnesses. The Court finds the Witness Key and the objective factual witness summaries are not privileged. They are underlying facts, and they did not become privileged when they were relayed to the attorney. Additionally, it is undisputed that one of the witnesses in the investigation was Plaintiff Jane Doe. Doe's statements are not privileged and Plaintiffs are entitled to them per Rule 26(b)(3)(C). The Court finds the "Findings" and "Recommendations" sections are privileged. However, as discussed, the School District has waived the privilege by continuing to rely on the *Faragher* defense.

**D. The School District's Response fails to address to the Court's satisfaction the extent to which the privilege could again be waived if the School District at trial were to rely on its investigation or its actions based on the investigation in defending against plaintiffs' affirmative claim that the School District acted with deliberate indifference.**

The Order instructed that any motion the School District filed "should also address the extent to which the privilege could again be waived if [the School District] at trial were to rely on its investigation or its actions based on the investigation in defending against plaintiffs' affirmative claim that [the School District] acted with deliberate indifference."[58] To address this issue, the School District argued in its Response that the actions it took in response to Plaintiffs' reported concerns regarding Hutchinson were successful and therefore necessarily could not be

---

[56] *Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)).

[57] Fed. R. Civ. P. 26(b)(3)(C).

[58] ECF No. 189 at 13.

the basis for Plaintiffs' deliberate indifference claims.[59] But this response begs the issue the School District was ordered to address. It fails to address the extent to which the privilege could be waived "if" the School District at trial does rely on its investigation or its actions based on the investigation in defending against Plaintiffs' deliberate indifference claims.[60]

In any event, the School District's argument on this point is without merit. In its Response, the School District did not include any citations to the record to support the argument that its actions were successful. Plaintiffs disputed the claim in their opposition, responding in kind without any citation to the record that the School District's "argument that its reprimand was successful is greatly disputed."[61] In its Reply, the School District elaborates on its argument, stating: "All of the alleged conduct of Defendant Hutchinson that provides the factual basis for Plaintiff Doe's Title IX claims occurred before the privileged document at issue was created by [the School District's] attorney."[62] In support, it offers a quote from Judge Lungstrum's order that has been taken out of context and is therefore misleading[63] and provides a series of citations to deposition testimony from the alleged uncontroverted facts in its motion for summary judgment, which purportedly show Plaintiffs' agreeing that Hutchinson did not do anything

---

[59] ECF No. 190 at 6.

[60] The Court also rejects the School District's argument, which is unsupported by citation to any legal authority, that Plaintiffs, by making their deliberate indifference claim, could not force the School District to waive privilege when defending against that claim. (ECF No. 190 at 7). It is the School District's decision to utilize the privileged document or information to rebut the deliberate indifference claim that results in waiver of the privilege. As discussed above, it could have avoided waiver by choosing instead not to utilize and rely upon the privileged Report and investigation.

[61] ECF No. 205 at 9.

[62] ECF No. 210 at 6.

[63] In an awkwardly worded sentence that appears to contain typographical errors, the School District seems to indicate (perhaps not intentionally) the Court recognized or noted in Judge Lungstrum's order that the School District "was not deliberately indifferent because there were no further problems with this teacher." (ECF No. 210 at 6). This is misleading in that the quoted language in the order was merely summarizing the School District's argument. The Court made no such finding.

improper during various time periods, at the school.[64] However, the citations do not appear to cover all relevant post-Report time periods (perhaps, for example, not the summer of 2016), and some of the testimony cited refers only to Hutchinson's conduct while at school (not encompassing any conduct that may have occurred off school grounds). Review of the complaint indicates that Plaintiffs do allege at least one post-Report incident involving Hutchinson as a basis for their Title IX claims.[65]

The School District's success of the investigation argument lacks merit for another reason. Plaintiffs' complaint asserts Title IX claims for sex discrimination or harassment and retaliation, including allegations of deliberate indifference not only against Hutchinson, but also against the School District. The written reprimand (actually titled "Personnel Conference Summary") upon which the School District relies states recommendations based upon information obtained during the course of its investigation, and gives directives not only to Hutchinson but to the School District as well, such as the following: "District administration shall maintain regular contact with students, parents and staff who were involved in the investigation and allegations to ensure such individuals are not being subjected to retaliation. A log of such regular contacts shall be maintained by the District administration."[66] But, nowhere in its briefing does the School District contend that the actions it took in response to Plaintiffs' reported concerns were successful in that there were no post-Report incidents of harassment

---

[64] ECF No. 210 at 6 (citing ECF No. 203).

[65] Plaintiffs allege that Hutchinson stared down Jane Doe in the Dollar General store in July 2016. *See* Amended Complaint, ECF No. 42 at 6, ¶39. There may be other post-Report incidents involving Hutchinson that support Plaintiffs' Title IX claims; the Court has not done a comprehensive review of the record. Additionally, as noted above, Plaintiffs have stated they dispute the School District's claim that its reprimand was successful. But, Plaintiffs' response to the motion for summary judgment is not yet due, so it is not yet known the extent, if any, to which Plaintiffs dispute the alleged uncontroverted facts upon which the School District relies.

[66] *See* ECF No. 183-1.

and/or retaliation by the School District's teachers or administrators (except with regard to Hutchinson) against Jane Doe. Plaintiffs have claimed, however, such post-Report incidents in July and September 2016 involving School District board members, a School District counselor, two volleyball coaches, and a track coach, of which School District employees and board members allegedly had knowledge but deliberately decided to take no action and were deliberately indifferent.[67]

The Court finds the School District has failed to satisfactorily address the extent to which the privilege could be waived if it were to rely on the investigation or its actions based on the investigation at trial. The School District relies solely upon its success of its investigation argument, which as discussed above, is unavailing.

## III. Conclusion

As discussed at length above, the Court has found the School District has not explained why its purported withdrawal of the *Faragher* defense means that the privilege should not be deemed waived. Therefore, notwithstanding the School District's purported withdrawal of the *Faragher* defense, the School District must produce the Report to Plaintiffs.

**IT IS THEREFORE ORDERED BY THE COURT** that the School District shall produce the Report in its entirety to Plaintiffs within fourteen (14) days from the date of this Order.

**IT IS SO ORDERED.**

Dated August 23, 2019, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

[67] *See* Amended Complaint, ECF No. 42 at 6–8, ¶¶40–55.