## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JANE DOE and                                    )
ANGELA HARRISON,                                )
                                                )
                          Plaintiffs,           )
                                                )
        v.                                      )        Case No. 16-2801-JWL
                                                )
USD No. 237, the Smith Center School District,  )
and BROCK HUTCHINSON,                           )
                                                )
                          Defendants.           )
                                                )
_____)

## MEMORANDUM AND ORDER

In this case, plaintiff Jane Doe and her mother, plaintiff Angela Harrison, assert federal and state-law claims against defendants USD No. 237 ("the District") and Brock Hutchinson, arising from Mr. Hutchinson's alleged sexual harassment of Ms. Doe while serving as a teacher and coach at her high school. The matter presently comes before the Court on various motions filed by defendants. For the reasons set forth below, the Court rules as follows. The Court **grants in part and denies in part** the motions for summary judgment on plaintiff Doe's claims filed by Mr. Hutchinson (Doc. # 200) and the District (Doc. # 202). The motions are granted with respect to Ms. Doe's claims for Title IX retaliation; her claims for invasion of privacy, other than a claim for intrusion upon seclusion based on the snapping of her bra strap; her negligence claims against the District, other than a claim for injuries directly resulting from the snapping of her bra strap; and her

claims for medical expenses, and defendants are awarded judgment on those claims. The motions are otherwise denied. The Court **grants** the District's motion for summary judgment on plaintiff Harrison's claim against it (Doc. # 195), and the District is awarded judgment on that claim. The Court **denies** defendants' motion to strike certain declarations submitted by plaintiffs in opposition to the summary judgment motions (Doc. # 223). Finally, the Court **grants** defendants' motion to determine the place of trial (Doc. # 193), and it designates Topeka as the place of trial for this matter.

## I.      Defendants' Motion to Strike Declarations

As a preliminary matter, the Court addresses defendants' motion to strike five declarations submitted by plaintiffs in opposition to defendants' summary judgment motions. The declarations at issue are by the following witnesses: Jade Colclasure, a former student; Drew Mann, a former student and Ms. Doe's sister; John McDonald, Ms. Harrison's father and Ms. Doe's grandfather; Z. Doe, a former student; and Beth Fischer, Z. Doe's mother. Defendants argue that plaintiffs failed to disclose those witnesses sufficiently in their disclosures pursuant to Fed. R. Civ. P. 26(a), which requires a party to provide, for any individual likely to have discoverable information that the party may use to support a claim or defense, the individual's name, his or her address and telephone number (if known), and the subjects of the information. *See id.* Defendants further argue that the Court should strike the declarations pursuant to Fed. R. Civ. P. 37(c)(1), which provides that if a party has failed to provide information about a witness required by Rule 26(a), the party may not use that witness to supply evidence on a motion unless the failure

was substantially justified or was harmless. *See id.* The Court concludes that any failure by plaintiffs in this case was harmless, and it therefore denies the motion to strike.

On September 13, 2017, plaintiffs served their initial Rule 26(a)(1) disclosures. Plaintiffs identified Beth Fischer, gave her telephone number (but not an address), described her as a substitute teacher and parent at the high school, and stated that she "has information regarding Coach Hutchinson, Principal Greg Koelsch and Smith Center's handling of complaints against Coach Hutchinson." Plaintiffs also identified Z. Doe (Ms. Fischer's son) without any contact information, described him as a former student at the school, and stated that he "has information concerning Coach Hutchinson's conduct." Plaintiffs also included Mr. Doe's "social media post" among the documents listed in the disclosure, and plaintiffs later produced such posts to defendants in discovery. On March 20, 2019, plaintiffs served supplemental disclosures pursuant to Rule 26(e). The disclosures included the following persons likely to have discoverable information, although without any contact information: Jade Colclasure, identified as a former student, who "may have knowledge regarding Brock Hutchinson's conduct;" Drew Mann, identified as plaintiff Doe's sister, who "may have knowledge regarding Plaintiffs' claims and damages;" and John McDonald, identified as plaintiff Harrison's father, who "may have knowledge regarding reports made to the School District about Brock Hutchinson's conduct and Plaintiffs' damages."

On April 29, 2019, defendants' counsel sent plaintiffs' counsel a letter requesting further supplementation of disclosures to include full contact information and subjects of knowledge, as required by Rule 26(a)(1), although the letter did not call out any disclosure

of a particular witness.  At a status conference the following day, and as memorialized in the third amended scheduling order, the Magistrate Judge instructed the parties to supplement their Rule 26(a) disclosures to include the information required by the rule. Plaintiffs did not provide any additional supplementation, however.  Defendants now argue that the Court should strike these five witnesses' declarations because plaintiffs did not provide information about those witnesses sufficient to comply with the rule and the Magistrate Judge's order.

The Court has broad discretion in applying Rule 37(c)(1).  *See HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).  The Court considers the prejudice to the party against whom the evidence is offered, as well as the offering party's bad faith or willfulness.  *See id.*

The Court does not minimize any non-compliance with the rule and the Magistrate Judge's order.  The Court notes, however, that plaintiffs did include all five witnesses in their disclosures.  Defendants nevertheless argue that they did not have contact information and more detailed subject descriptions, and thus that they were denied the opportunity to seek discovery from those witnesses before the discovery deadline.  The Court does not agree, however, that defendants suffered any such prejudice from any deficiency in plaintiffs' disclosures.  Defendants were told that these individuals may have relevant information, and they were told the general subjects of that information.  Moreover, discovery had provided more information to defendants concerning these witnesses' knowledge.  Defendants had already received Ms. Fischer's declaration in February 2019, and that declaration included information received from her son, Z. Doe.  Defendants had

been provided with Z. Doe's social media posts.  There had been deposition testimony about Ms. Colclasure, Ms. Mann, and Mr. McDonald, and plaintiffs had produced Mr. McDonald's notes.  If defendants were truly in the dark about the subject of a witness's knowledge, they could have sought such information specifically from plaintiffs' counsel.

Defendants have also failed to show that they were denied the opportunity to contact these witnesses or to seek discovery from them.  Defendants have not stated that counsel tried and failed to contact a witness.  Plaintiffs had disclosed Ms. Fischer's telephone number, and defendants could have contacted her to locate Z. Doe, her son.  Ms. Mann and Mr. McDonald are plaintiffs' relatives, and plaintiff Harrison identified Mr. McDonald's city of residence in her deposition, but defendants apparently made no attempt to locate those witnesses; nor did defendants take the simple step of requesting that plaintiffs' counsel produce them for depositions.  Finally, defendants do not dispute that in June 2019 their counsel *did* contact Ms. Colclasure, who answered counsel's questions; defendants have not explained why they were not able to make such contact earlier, or why they could not have used school records to attempt to contact former students and parents.

Finally, the Court notes that defendants never asked plaintiffs for additional information, even after plaintiffs failed to provide additional supplementation after the status conference.  If defendants believed that they lacked sufficient information to determine whether to undertake any discovery, they were obliged to make such a request of plaintiffs or to seek relief from the Court in a timely fashion, prior to the close of discovery.  For these reasons, the Court concludes that plaintiffs substantially complied with the rule and that defendants have not shown any prejudice from any technical

violation.  The Court also does not agree with defendants that there is any basis to conclude that plaintiffs acted in bad faith.  Accordingly, the Court denies the motion to strike.

## II.     Defendant Hutchinson's Motion for Summary Judgment

### A.     *Governing Standards*

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to

those dispositive matters for which he or she carries the burden of proof." *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> B.  *Section 1983 Claim*

Plaintiff Doe asserts a claim against defendant Hutchinson under 42 U.S.C. § 1983 for sexual harassment. Ms. Doe was a student at Smith Center High School from August 2013 to October 2016. Mr. Hutchinson was a teacher and coach at the school during that period.

In affirming this Court's denial of Mr. Hutchinson's motion to dismiss this claim based on qualified immunity, the Tenth Circuit set forth the governing law as follows:

> Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983. It is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause.
>
> One form of actionable sexual harassment is "hostile environment harassment." To prevail on such a claim, a plaintiff must show that the defendant's conduct was sufficiently severe or pervasive as to interfere unreasonably with her school performance and create a hostile or abusive educational environment. The severe or pervasive inquiry should be judged from the perspective of a reasonable person in the plaintiff's position,

considering all of the circumstances. Accordingly, the analysis depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Two such considerations are the ages of the harasser and the victim.

*See Doe v. Hutchinson*, 728 F. App'x 829, 832 (10th Cir. 2018) (citations, internal quotations, and footnote omitted). The Tenth Circuit further discussed certain principles concerning the type of conduct that could contribute to the totality of the circumstances on which liability may be based, as follows:

First, facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct. This is because what is important in a hostile environment claim is the *environment*, and gender-neutral harassment makes up an important part of the relevant environment.

Second, incidents of sexual harassment directed at students other than the plaintiff can be used as proof of the plaintiff's claim of a hostile environment. Doe may rely on evidence that Hutchinson directed gender-based comments to other students to help establish a general atmosphere of harassment provided she was aware of such conduct.

Third, Hutchinson's argument fails to recognize that sexually charged comments, even if not directly about gender, qualify as gender-related under our case law. Although we do not impose a general civility code, we include comments and actions that are inherently sexual in nature under the rubric of "gender-related."

*See id.* at 832-33 (citations and internal quotations omitted).[1]

---

[1] The Tenth Circuit also concluded that "any reasonable high school teacher would have understood that the conduct alleged created a hostile environment in violation of Doe's equal protection rights;" thus, the court upheld this Court's conclusion, in applying the second prong of the qualified immunity analysis, that the law was clearly established concerning the right asserted by the plaintiff. *See Doe*, 728 F. App'x at 834-35. In seeking summary judgment, Mr. Hutchinson has not raised that issue concerning the application of qualified immunity.

In response to Mr. Hutchinson's summary judgment motion, Ms. Doe has submitted evidence that, viewed in the light most favorable to her, adequately supports her claim of sexual harassment under the standards set forth above. Accordingly, the Court concludes that a question of fact remains concerning Mr. Hutchinson's liability on this claim.

Mr. Hutchinson first renews his argument that his alleged conduct was not based on gender, but he has not addressed the Tenth Circuit's explicit rejection of that argument. As that court noted, gender-neutral abusive conduct can contribute to a hostile environment, and comments that are sexual in nature are considered gender-related. Ms. Doe has submitted evidence of comments by Mr. Hutchinson that are sexual in nature.

The Court also rejects Mr. Hutchinson's argument that the alleged conduct was not sufficiently severe or pervasive, as Ms. Doe has submitted evidence sufficient to create a question of fact on that issue. More specifically, Ms. Doe has submitted evidence to support the following allegations of inappropriate conduct by Mr. Hutchinson in Ms. Doe's presence.[2] Mr. Hutchinson would routinely snap the bra straps of Ms. Doe in the hallways of the school, leaving welts on her back, and he would also snap other girls' straps.[3] He would also smack students on their rear end, pat students' shoulders, and on at least one occasion he popped Ms. Doe's back in a way that made her uncomfortable. He made frequent sexual jokes and comments, including relating to his own sexual experiences with

---

[2] By providing these examples, the Court does not mean to suggest that other conduct alleged by Ms. Doe would not be relevant to this claim.

[3] The Court does not agree with defendants that Ms. Doe's declaration should be rejected as a sham declaration as it relates to his evidence. Ms. Doe also testified about this conduct in her deposition, and the statement in her declaration about the welts does not contradict any testimony by Ms. Doe about the severity of the conduct.

his wife. On one occasion, after a ball bounced between Ms. Doe's legs in gym class, Mr. Hutchinson stopped the game and made a sexually-crude comment about her to the class. He referred to other girls in sexual terms. He would encourage girls to practice in sports bras or to take their shirts off if they were hot, and he would boast about having convinced girls to do so. When Mr. Hutchinson witnessed his son making a sexually-explicit comment to Ms. Doe, he told his son to refrain from making such comments not because they were inappropriate, but because he would "have her mom riding [Mr. Hutchinson's] ass in here again." Mr. Hutchinson told Ms. Doe's boyfriend's father that the boy should not date Ms. Doe. Mr. Hutchinson sat on Ms. Doe's feet at a volleyball game in an attempt to intimidate her. In addition, Mr. Hutchinson's proclivity for making inappropriate sexual comments was so well known that such conduct was commonly referred to as "Brock being Brock."

In his reply brief, Mr. Hutchinson argues that any such conduct occurred before January 2015 and that Ms. Doe did not suffer her alleged emotional harm until May 2016. Any such argument concerning causation of harm was not raised in the initial brief, however, and the Court therefore will not consider it. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Moreover, Ms. Doe did not testify that no inappropriate conduct occurred after her mother's first complaint in January 2015, during Ms. Doe's sophomore year. In the testimony on which Mr. Hutchinson relies, Ms. Doe was asked whether he did "anything specific" to her "after he received this e-mail on January 28th, 2015," and she replied "Not that I can remember."

That testimony may reasonably be interpreted (in the light most favorable to Ms. Doe) to mean that he did not do anything specifically in response to the email, in the immediate aftermath. In fact, Ms. Doe testified multiple times about conduct occurring through her junior year of high school (for instance, snapping of bra straps, smacking of rear ends, suggestive comments, encouraging girls to remove their shirts).

When considered with the age difference between Mr. Hutchinson and Ms. Doe and the power dynamic inherent in their roles as teacher and student, the evidence is sufficient to create a triable issue concerning whether sexual harassment by Mr. Hutchinson was sufficiently severe or pervasive. *See Doe*, 728 F. App'x at 834 (ages and nature of relationship should be considered in assessing the requisite degree of severity or pervasiveness). Indeed, the Tenth Circuit has already ruled in this case that such conduct is sufficient to allow the claim to proceed. *See id.* at 833-34. Accordingly, the Court denies Mr. Hutchinson's motion for summary judgment on Ms. Doe's Section 1983 sexual harassment claim.

C.     *State-Law Tort Claims*

1.     SUPPLEMENTAL JURISDICTION

Plaintiff Doe asserts claims against Mr. Hutchinson under Kansas law for invasion of privacy and intentional infliction of emotional distress. Mr. Hutchinson argues that the Court should decline supplemental jurisdiction over these claims if no federal claim against him remains. As discussed above, Ms. Doe's federal claim under Section 1983 remains for trial; thus, the Court will continue to exercise supplemental jurisdiction over her state-law claims.

## 2.    SUFFICIENCY OF NOTICE OF CLAIM

In his initial brief, Mr. Hutchinson notes that the Court has ruled on two occasions that plaintiffs complied sufficiently with the notice requirement of the Kansas Tort Claims Act (KTCA), K.S.A. § 12-105b(d), and he states that Ms. Doe "should not be permitted to expand her claims beyond what was contained in her notice of claim."  He does not indicate in that brief, however, any reason for the Court's reconsideration of its prior rulings or any particular manner in which the notice was insufficient.  In his reply brief, Mr. Hutchinson argues that the notice fails to address any alleged conduct occurring after July 2016.  As the Court has previously noted, however, the notice need not contain all facts in support of the claims.  *See Doe v. USD 237*, 2017 WL 5134005, at *6 (D. Kan. Nov. 6, 2017) (Lungstrum, J.).  The Court again concludes that the notice was sufficient, for the same reasons previously stated.

## 3.    INVASION OF PRIVACY

Ms. Doe asserts a claim under Kansas law for invasion of privacy.  Ms. Doe seeks to assert two separate types of privacy claims recognized by Kansas law:  publicity given to private life and intrusion upon seclusion.  *See Froelich v. Adair*, 213 Kan. 357, 358-59 (1973) (citing Restatement (Second) of Torts (tentative draft) §§ 652D, 652B).  In the pretrial order, Ms. Doe does appear to have preserved both claims, alleging as follows:

> Hutchinson unreasonably intruded upon Jane Doe's seclusion when he sought to elicit details of her sexual practices from other minor male students in front of an audience of other male students.  Hutchinson also caused to be public private details regarding Jane Doe's sexuality.

The Court addresses each privacy claim in turn.

12

a.  The Restatement provides as follows: "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *See* Restatement (Second) of Torts § 652D.  In support of this claim in her brief, Ms. Doe cites only the following conduct:

> Hutchinson asked his wrestlers about her sexual activity with her boyfriend on district property or in connection with district programs.  This was the subject of "locker room" talk among a group of students that was then leaked to students outside the locker room.

In support of those alleged facts, Ms. Doe cites only to her own testimony (or that of her mother, who heard these facts from Ms. Doe).  Ms. Doe did not witness any such statements by Mr. Hutchinson, but testified that her then-boyfriend told her this information.  That evidence of the boyfriend's statements to Ms. Doe is inadmissible as hearsay, however, as the evidence is offered for the truth of the matter asserted, namely that Mr. Hutchinson did in fact ask those questions and disseminate the information.  *See* Fed. R. Evid. 801(c), 802.  Ms. Doe has not identified any reason why the boyfriend's statements are not hearsay or fit within a hearsay exception.  Nor has Ms. Doe offered any other evidence that Mr. Hutchinson made such statements (the boyfriend states in a sworn declaration that no such conduct by Mr. Hutchinson occurred).

Thus, Ms. Doe has not provided any admissible evidence to support the allegation on which she bases this claim.  Accordingly, Mr. Hutchinson's motion is granted, and he

is awarded summary judgment on Ms. Doe's claim for invasion of privacy through publicity.

b.    With respect to the privacy tort of intrusion upon seclusion, Kansas courts have looked to the Restatement. *See Moore v. R.Z. Sims Chevrolet-Subaru, Inc.*, 241 Kan. 542, 547 (1987). Section 652B of the Restatement provides as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*See* Restatement (Second) of Torts § 652B.

Plaintiff Doe argues that Mr. Hutchinson intruded upon her seclusion by asking her boyfriend about her sexual affairs in front of the wrestling team. As discussed above, however, Ms. Doe has not submitted admissible evidence to support that allegation, and Mr. Hutchinson is therefore entitled to judgment on such a claim.

Ms. Doe also argues that Mr. Hutchinson intruded upon her privacy physically, in four ways: (1) he sat on her feet while glaring at her at a game; (2) he hugged her from behind, lifting her feet off the ground, while attempting to pop her back (which had been bothering her); (3) he "popped" her bra; and (4) he followed her from aisle to aisle in a store. All of these events are alleged to have occurred in public places. The Restatement, however, requires an intrusion upon the plaintiff's solitude or seclusion, and the comments make clear that the physical intrusion must be into a private place or a place in which the plaintiff has secluded himself or herself. *See id.* cmt. a, b, c; *see also Moore*, 241 Kan. at 549 (no substantial intrusion upon seclusion because kitchen of a café was not an area of

seclusion or solitude); *Ulrich v. K-Mart Corp.*, 858 F. Supp. 1087, 1095 (D. Kan. 1994) (work area of a business, into which other employees could be expected to enter, does not constitute a place of seclusion), *aff'd*, 70 F.3d 1282, 1995 WL 703946 (10th Cir. 1995) (unpub. op.). Thus, these public events ordinarily could not support a claim for invasion of privacy by intrusion upon seclusion (whether or not they may form the basis for some other cause of action).

The Restatement does note one exception, however:

> Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.

Restatement (Second) of Torts § 652B cmt. c. When Mr. Hutchinson frequently snapped Ms. Doe's bra strap (as supported by Ms. Doe's evidence), he was physically intruding upon an area of her person (like the underwear cited in the Restatement) that she had kept secluded. Moreover, the Court concludes that a reasonable jury could find that such conduct would be highly offensive to a reasonable person. Accordingly, Ms. Doe may pursue this claim based on Mr. Hutchinson's conduct in snapping her bra strap, although he is entitled to summary judgment to the extent that this claim is based on other conduct.

Mr. Hutchinson argues that he is protected from liability on this claim by the KTCA's discretionary function immunity. *See* K.S.A. 75-6104(e). The Kansas Supreme Court has made clear, however, that while the immunity may apply to negligent acts, acts involving more than the lack of ordinary care are not protected by this immunity. *See Moran v. State*, 267 Kan. 583, 595-97 (1999) (citing, *inter alia*, *Hopkins v. State*, 237 Kan.

15

601, 611 (1985)); *see also Nicol v. Auburn-Washburn USD 437*, 231 F. Supp. 2d 1092, 1106 (D. Kan. 2002) (citing cases) (immunity does not apply to intentional torts). Therefore, this immunity does not apply to the intentional tort of invasion of privacy.

Accordingly, the Court denies the motion for summary judgment on Ms. Doe's claim for invasion of privacy through intrusion upon seclusion to the extent based on conduct involving the snapping of her bra strap. The motion is granted, and Mr. Hutchinson is awarded summary judgment on Ms. Doe's publicity claim and on her intrusion claim to the extent based on any other conduct.

4.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mr. Hutchinson seeks summary judgment on Ms. Doe's claim for intentional infliction of emotional distress (IIED). To prevail on such a claim (which is also known as the tort of outrage), Ms. Doe must prove the following elements: (1) the conduct was intentional or in reckless disregard of her; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and her mental distress; and (4) the mental distress was extreme and severe. *See Valadez v. Emmis Communications*, 290 Kan. 472, 476 (2010).

> Conduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt. In order to provide a sufficient basis for an action to recover for emotional distress, conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society.

*See id.* at 477.

The Court concludes that Mr. Hutchinson is not entitled to judgment as a matter of law on this claim. The alleged conduct by Mr. Hutchinson, described above in the discussion of the sexual harassment claim, includes among other conduct crude comments of a sexual nature and the routine infliction of physical pain by snapping Ms. Doe's bra strap. A jury could reasonably conclude that the alleged conduct by Mr. Hutchinson, who as a teacher assumed a position of authority over Ms. Doe, was extreme and outrageous. *See* Restatement (Second) of Torts § 46 cmt. e (conduct may be more likely to be extreme and outrageous if the actor is in a position of authority); *Glover v. Heart of Am. Mgmt. Co.*, 38 F. Supp. 2d 881, 889 (D. Kan. 1999) (conduct that included sexual innuendos, vulgar and offensive remarks, and repeated hair-pulling was sufficiently outrageous to survive summary judgment on claim for intentional infliction of emotional distress). Moreover, Ms. Doe testified to her emotional harm, and the severity of that harm presents a question of fact for the jury, as does the issue of causation. Finally, as discussed above, discretionary function immunity would not apply to this intentional tort. Accordingly, the Court denies Mr. Hutchinson's motion for summary judgment on this claim.

### D. *Medical Expenses*

Finally, Mr. Hutchinson seeks summary judgment on any claim by Ms. Doe for damages for medical expenses incurred. As set forth in the pretrial order, Ms. Doe seeks $2,360 for past medical expenses and $75,000 for estimated future medical expenses.

Ms. Doe testified that she did not pay any past medical expenses, and she does not provide any reason why she would be entitled to such damages. Therefore, the Court grants summary judgment on the claim for past medical damages.

Ms. Doe does argue that she might incur future medical expenses as an adult, and she cites the testimony by her therapist that symptoms may be present in the future. She has not cited any testimony, however, that she is likely to need additional therapy in the future. Nor has Ms. Doe has provided any other evidence that she is likely to incur medical expenses in the future. Therefore, Ms. Doe has not met her burden to come forward with evidence to support such a claim, and accordingly, the Court awards summary judgment in favor of Mr. Hutchinson on Ms. Doe's claims for past and future medical expense damages.

### III.  Defendant District's Motion for Summary Judgment – Doe Claims

#### A.  *Title IX Sexual Harassment Claims*

Ms. Doe asserts claims against the District under Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex under an education program or activity receiving federal funds. *See* 20 U.S.C. § 1681(a). As set forth in the pretrial order, Ms. Doe asserts three distinct claims against the District under Title IX:  sexual harassment based on official policies of the District (referred to in the pretrial order as a *Simpson* claim); sexual harassment based on a hostile educational environment (an *Escue* claim); and retaliation.

In its initial brief, the District argued that it was entitled to summary judgment on the hostile environment claim, but it did not address the separate *Simpson* claim under Title IX. After Ms. Doe pointed out this distinction in her opposition, the District argued in its reply brief that a *Simpson*-type claim is not appropriate in this case. As noted above, however, the Court is not obligated to address arguments raised for the first time in a reply

brief, and the Court declines to do so here. Accordingly, the District's motion is denied to the extent it relates to Ms. Doe's *Simpson* claim under Title IX.

The Court now turns to Ms. Doe's Title IX sexual harassment claim based on a hostile environment. The United States Supreme Court has held that a private right of action exists under Title IX to enforce the prohibition on intentional sex discrimination and to seek monetary damages. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (citing cases). It has further held that that right of action "encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to a teacher's sexual harassment of a student." *See id.* (citing *Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 290-91 (1998)). The standard for such a claim is as follows: the plaintiff must show that an "appropriate person" – that is, an official with authority to address the alleged discrimination and to institute corrective measures on behalf of the federal recipient – had actual notice of discrimination in the educational program and responded with deliberate indifference to discrimination. *See Gebser*, 524 U.S. at 290.

The District first argues that notice to the School Board itself was required because only the Board had policymaking authority under Kansas law. That argument is at odds with *Gebser*, however, as the Supreme Court in that case defined the "appropriate person" who must have actual notice as an official with authority to take corrective action. *See id.* The District does not dispute that the school principal and the district superintendent had such authority in this case. On the other hand, Ms. Doe suggests that any teacher might have been an "appropriate person," but she has not shown that any teacher had the requisite authority to take corrective measures. *See Ross v. University of Tulsa*, 859 F.3d 1280,

1289-90 (10th Cir. 2017) (one with a duty to report harassment is not an "appropriate person" under Title IX unless he or she has the authority to take corrective action; passing on of complaint is not itself corrective action).

It is undisputed that plaintiffs complained about Mr. Hutchinson's conduct to the principal and superintendent in January 2015 and to the School Board in May 2016. Ms. Doe also provided evidence that a parent had previously complained about sexually-inappropriate comments by Mr. Hutchinson to students. Moreover, the evidence from multiple sources that Mr. Hutchinson's inappropriate conduct was often referred to as "Brock being Brock" provides some evidence that such conduct was so well known that administrators had actual notice of a risk of harassment by Mr. Hutchinson.[4]

In seeking summary judgment on this claim, the District argues that the harassment was not severe or pervasive in this case. The Court rejects this argument. Evidence favoring the District on this issue does not mean that the issue may be decided in its favor as a matter of law. The Court must view the evidence in Ms. Doe's favor at this stage, and Ms. Doe has provided evidence, as set forth above with respect to the harassment claim against Mr. Hutchinson, of inappropriate conduct of a sexual nature that a reasonable jury could deem severe or pervasive. A question of fact remains on this issue.

The Court similarly rejects the District's argument that it was not deliberately indifferent to a risk of harassment by Mr. Hutchinson as a matter of law. A funding

---

[4] The Court need not decide at this time whether evidence of notice of a prior consensual sexual relationship between Mr. Hutchinson and a student may be considered on the issue of the District's actual notice of a risk of harassment.

recipient has been deliberately indifferent if its response to harassment was clearly unreasonable in light of the known circumstances. *See Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). The District argues that its response to the January 2015 complaint was reasonable as a matter of law because Ms. Doe admitted that there was no inappropriate conduct after that time. As discussed above with respect to Mr. Hutchinson's motion, however, there is evidence that the harassment did continue after that date. There is also evidence that Mr. Hutchinson was not disciplined in any meaningful way as a result of that complaint. Accordingly, a question of fact remains for trial concerning whether the District's response to known harassment was reasonable and thus whether the District acted with deliberate indifference. The Court denies the District's motion for summary judgment on Ms. Doe's Title IX sexual harassment claim.

### B.     *Title IX Retaliation Claim*

Ms. Doe also asserts a claim under Title IX for retaliation. The Supreme Court has held that Title IX's implied right of action encompasses a claim of retaliation for a complaint about sex discrimination. *See Jackson*, 544 U.S. 167. In analyzing such claims, courts have looked to caselaw governing retaliation claims under Title VII, including use of the *McDonnell Douglas* framework. *See C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1336 (D. Kan. 2008) (Lungstrum, J.). Under that framework, the plaintiff must show a materially adverse action. *See id.* An action is materially adverse if it may have dissuaded a reasonable person from making or supporting the charge of discrimination. *See Burlington N. & S.F. Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The District argues that Ms. Doe must show that the District (or an appropriate person with corrective authority) had actual notice of retaliation and was deliberately indifferent to it. Ms. Doe disputes that such a showing is necessary, although she has not provided any authority or analysis to support that position. In *Jackson*, the Supreme Court held that the alleged retaliation by the federal recipient itself could constitute discrimination in violation of Title IX. *See id.* In this case, however, Ms. Doe has not alleged any retaliatory acts by the District or the School Board or by any appropriate person with corrective authority such as the principal or superintendent. Rather, in support of this claim Ms. Doe only points to conduct by Mr. Hutchinson, the school counselor, coaches, a teacher, and her fellow students. In *Gebser*, the Supreme Court rejected liability under Title IX based on agency principles or *respondeat superior* or constructive notice; rather, the recipient itself must have violated the statute, as when it (through an appropriate person) has had actual notice of and been deliberately indifferent to discrimination. *See Gebser*, 524 U.S. 274; *see also Davis*, 526 U.S. at 640-43 (recipient may be liable under Title IX only for its own misconduct; thus the Court in *Gebser* rejected the use of agency principles to impute liability to the recipient for the misconduct of its teachers). Therefore, the Court concludes that if the alleged retaliatory acts were committed by a person other than the recipient itself or an appropriate person with corrective authority, the plaintiff must show the recipient's actual notice of and deliberate indifference to the retaliation against the plaintiff. *See, e.g.*, *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 695 (4th Cir. 2018) (Title IX retaliation could be premised on the recipient's deliberate indifference to retaliatory harassment). Otherwise, the District would be held liable for its employee's

misconduct and not its own, and such a result would violate the Supreme Court's rejection of agency liability under Title IX.

In opposing summary judgment on this claim, Ms. Doe cites the following eight instances of retaliation: (1) she was interrogated by the counselor in a meeting and forced to apologize to Mr. Hutchinson's daughter (a fellow student), and she received a bad grade from a teacher because she missed class for the meeting; (2) track coaches consulted with Mr. Hutchinson about her discipline for an infraction; (3) she lost playing time on the volleyball team; (4) the volleyball coach allowed Mr. Hutchinson to serve as a line judge at games; (5) the counselor tried to prevent her from taking a particular weight-lifting class; (6) Mr. Hutchinson followed her at a store during the summer; (7) she was bullied and intimidated; and (8) a teacher was not friendly to her. Ms. Doe has not provided any evidence that the District had notice of any of these allegedly retaliatory acts, however, except with respect to the first and sixth acts listed here. Thus, the District cannot be liable under Title IX for deliberate indifference to discrimination in the form of retaliation based on the other six alleged acts of retaliation, and the District is thus awarded summary judgment on this claim to that extent.

Nor can Ms. Doe pursue a claim based on the first alleged act, in which she was allegedly berated, forced to apologize, and given a bad grade. Ms. Doe has provided evidence that her mother complained about this meeting in an August 2016 email to the school principal, but in that email she only complained that she had not consented to such a meeting and that Ms. Doe should not be interrogated like that again. There is no evidence that the District or the principal was given notice of anything specific that occurred at the

meeting or of a resulting bad grade. Moreover, Ms. Doe's mother testified that no such similar meeting took place after her complaint. Thus, based on the evidence submitted by Ms. Doe, a reasonable jury could not find that the District had actual notice of any retaliatory conduct associated with this meeting to which it was deliberately indifferent.

That leaves only the incident involving Mr. Hutchinson's conduct at the store, which Ms. Doe and her mother reported to school officials. Ms. Doe testified that during the summer of 2016, away from school property, Mr. Hutchinson stared at her in the parking lot and then appeared (without uttering a word) in each aisle visited by Ms. Doe while she shopped for a single item at a store. The Court concludes that a reasonable jury could not find that such conduct, by itself, would dissuade a reasonable person from making or supporting her charges of sexual harassment by Mr. Hutchinson. Thus, Ms. Doe cannot show that she suffered a materially adverse action in this instance as a matter of law, and this conduct therefore cannot support a claim of Title IX retaliation. Accordingly, the District is awarded summary judgment on Ms. Doe's Title IX retaliation claim in its entirety.

C. *State-Law Tort Claims*

1.     SUPPLEMENTAL JURISDICTION

Like Mr. Hutchinson, the District argues that if Ms. Doe's federal claims do not survive, the Court should decline to exercise supplemental jurisdiction over the claims against it under Kansas law. Two of Ms. Doe's Title IX claims remain, however, and the Court therefore rejects this argument.

2.     SUFFICIENCY OF NOTICE OF CLAIM

The Court also rejects the District's argument that Ms. Doe's notice of claim was not sufficient for purposes of the KTCA. The District has not explained how the Court erred in rejecting this argument on two prior occasions. Nor has the District cited any authority supporting the argument that Ms. Doe's claims are barred by waiver and estoppel based on her alleged failure to cooperate with the District's investigation (the notice statute contains no such requirement). Nor will the Court consider other arguments concerning the notice of claim that the District made for the first time in its reply brief.

3.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

a.    Ms. Doe asserts a claim against the District for intentional infliction of emotional distress (IIED). As set forth in the pretrial order, Ms. Doe bases this claim not only on conduct by Mr. Hutchinson in the scope of his employment (vicarious liability of the District), but also on conduct by the District itself, in which "the District sought to intimidate and retaliate against Jane Doe for trying to report Hutchinson's conduct." In its initial brief, the District only addresses this claim to the extent based on Mr. Hutchinson's conduct, and it does not address Ms. Doe's direct-liability claim until its reply brief. The Court will not consider those untimely arguments, and it therefore denies the motion for summary judgment on the IIED claim against the District under a theory of direct liability.

b.    With respect to the claim for vicarious liability, the District first incorporates by reference the arguments asserted by Mr. Hutchinson in his motion. The Court rejected those arguments, however, and therefore they do not provide a basis for summary judgment in the District's favor on the IIED claim.

The District also argues that it cannot be vicariously liable for Mr. Hutchinson's conduct because he was not acting within the scope of his employment at that time.[5] "Pursuant to Kansas law, an employer is only liable for injuries caused by an employee acting within the scope of his employment." *See O'Shea v. Welch*, 350 F.3d 1101, 1103 (10th Cir. 2003) (citing *Williams v. Community Drive-In Theater, Inc.*, 214 Kan. 359, 366 (1974)). The Tenth Circuit has described the following pattern instruction as an accurate statement of Kansas law concerning the scope of employment:

> An employee is acting within the scope of [his employment] when [he] is performing services for which [he] has been [employed], or when [he] is doing anything which is reasonably incidental to [his employment]. The test is not necessarily whether this specific conduct was expressly authorized or forbidden by the employer[], but whether such conduct should have been fairly foreseen from the nature of the [employment] and the duties relating to it.

*See id.* (quoting Pattern Instructions Kansas 3d 107.06; *Williams*, 214 Kan. at 364) (brackets in original). The Tenth Circuit has also held that Kansas courts would likely apply the slight deviation rule, which the Tenth Circuit described in the following ways:

> To exonerate the master, however, it is essential that the deviation be for purposes entirely personal to the servant; and a deviation will be regarded as immaterial if the latter combines his own business with that of the master or attends to both at substantially the same time. A mere deviation from the strict course of this duty does not release the master from liability. In order to have that effect it must be so substantial as to amount to an entire departure.

*See id.* at 1107 (quoting *Kruse v. White Bros.*, 253 P. 178, 181 (Cal. Ct. App. 1927) (internal citations omitted)).

---

[5] The Court will not consider other arguments concerning Mr. Hutchinson's alleged conduct that the District made for the first time in its reply brief.

A mere deviation by an employee from the strict course of his duty does not release his employer from liability. An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer's business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer's assent may be fairly assumed. In many instances they are the mingling of a personal purpose with the pursuit of the employer's business. In order to release an employer from liability, the deviation must be so material or substantial as to amount to an entire departure.

*See id.* (quoting *De Mirjian v. Ideal Heating Corp.*, 278 P.2d 114, 118 (Cal. Ct. App. 1954)). Finally, the Tenth Circuit has stressed that the question of the scope of employment and the application of the slight deviation rule are ordinarily questions of fact for the jury. *See id.* at 1106-07.

The District essentially argues that if a person's conduct is sufficient to meet the requirements of IIED, such conduct cannot be considered within the scope of the person's employment as a matter of law. Neither the Kansas Supreme Court nor the Kansas Court of Appeals has indicated, however, that an employer can never be liable vicariously for its employee's IIED. The District cites *Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1994), in which the Tenth Circuit upheld summary judgment in favor of an employer on an IIED claim based on the conduct of an employee. *See id.* at 553-54. In that case, however, the Court noted that the plaintiff had not alleged that the allegedly outrageous conduct fell within the scope of the perpetrators' employment, and thus the court did not analyze the issue under Kansas law (or under the slight deviation rule that the Tenth Circuit predicted Kansas would apply in *O'Shea* ten years later). The District also cites *Anspach v. Tomkins Industries, Inc.*, 817 F. Supp. 1499 (D. Kan. 1993) (O'Connor, J.), *aff'd on other grounds*,

51 F.3d 285, 1995 WL 133385 (10th Cir. 1995) (unpub. op.), in which the court ruled that certain defendants could not be vicariously liable for outrageous conduct by the plaintiff's non-management co-workers. *See id.* at 1506-07. The court stated that that outcome was clear in that case under Kansas cases addressing the scope-of-employment issue; it did not, however, state that such a claim could never lie under any facts. *See id.*

The District also cites *Casas v. City of Overland Park*, 2001 WL 584426 (D. Kan. May 14, 2001) (Murguia, J.), in which the court ruled as a matter of law that outrageous conduct sufficient to establish a claim for IIED under Kansas law is not within the scope of employment of a government employee. *See id.* at *9-10. The court relied on *Bolden*, but as discussed above, the Tenth Circuit in that case did not hold that no such claim could ever succeed. *See id.* Moreover, like *Bolden*, *Casas* preceded *O'Shea*, in which the Tenth Circuit refined the relevant analysis while stressing that the issue is normally one of fact for the jury. Indeed, four years later, the same judge refused to dismiss on the pleadings a claim for vicarious liability for IIED, relying in part on *O'Shea*. *See Stoldt v. Centurion Indus., Inc.*, No. 03-2634, slip. op. at 5-8 (D. Kan. Apr. 6, 2005) (Murguia, J.).

Accordingly, the Court will not apply a blanket rule prohibiting this claim, but will instead apply the test set out by the Tenth Circuit in *O'Shea*. Under that test, the defendant employer must show an entire departure by the employee; a deviation will be disregarded if the employee combined his own business with that of his employer. *See O'Shea*, 350 F.3d at 1107. In this case, with the exception of one incident occurring at a store (which conduct therefore could not support liability of the District on this claim), the allegedly outrageous conduct of Mr. Hutchinson toward Ms. Doe occurred at the school or at school

events, while Mr. Hutchinson was serving as a teacher and coach. Thus, a reasonable jury could find that any outrageous conduct for Mr. Hutchinson's personal purposes represented only a slight deviation and thus fell within the scope of his employment by the District. Again, this issue is normally reserved for the jury, and the Court concludes that the jury should decide the issue in this case. Accordingly, the Court denies the District's motion for summary judgment on Ms. Doe's IIED claim against it.

### 4. INVASION OF PRIVACY

Ms. Doe asserts a claim against the District for invasion of privacy, based on a theory of vicarious liability for the tortious conduct of Mr. Hutchinson, its employee. The District is entitled to summary judgment on this claim to the same extent that summary judgment was awarded to Mr. Hutchinson, leaving only a claim for intrusion upon seclusion based on Mr. Hutchinson's snapping of Ms. Doe's bra strap. The Court rejects the District's argument based on discretionary function immunity for the same reasons set forth above in the discussion of Mr. Hutchinson's motion. The Court also rejects the District's argument that such conduct was not within the scope of Mr. Hutchinson's employment as a matter of law, for the same reasons set forth above in the Court's discussion of the IIED claim against the District.

### 5. NEGLIGENCE CLAIMS

Ms. Doe asserts claims against the District for negligent supervision or retention of an employee (Mr. Hutchinson) and for negligent supervision of a child (Ms. Doe). The District asserts various arguments against the negligence claims collectively, which the Court addresses in turn.

a. The District argues that it is entitled to summary judgment on the negligence claims because Ms. Doe has failed to provide evidence of the requisite physical injury, which means that she cannot recover any damages for emotional distress.[6] "It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff." *See Hoard v. Shawnee Mission Med. Ctr.*, 233 Kan. 267, 274 (1983). Ms. Doe concedes that she must show a related physical injury to recover damages for emotional distress.

Ms. Doe has submitted evidence that she suffered the following from Mr. Hutchinson's conduct: crying; inability to sleep; panic attacks and anxiety; migraine headaches; stomachaches; inability to eat or overeating. Kansas courts have consistently held, however, that the physical-injury requirement is not satisfied by generalized physical symptoms of emotional distress, such as PTSD, nightmares, headaches, nausea, crying, stress, depression, shaking, hypertension, anxiety, and lack of sleep. *See Majors v. Hillebrand*, 51 Kan. App. 2d 625, 628-29 (2015) (citing cases). Thus the conditions listed above that Ms. Doe allegedly suffered do not meet this requirement. Ms. Doe also notes that she has alleged that Mr. Hutchinson made physical contact with her when he sat on her feet and when he lifted her to pop her back, but she has not provided any evidence that

---

[6] In the pretrial order, Ms. Doe seeks damages for pain and suffering and for emotional distress. She also seeks damages for past and future medical expenses, but the Court has awarded defendants summary judgment on any such claim for medical expenses, as set forth elsewhere in this opinion.

she suffered any physical injury from those contacts (or that any such injury accompanied or were caused by her emotional distress).

As Ms. Doe notes, Kansas courts have recognized an exception to the physical injury requirement for willful or wanton conduct. *See Curts v. Dillard's, Inc.*, 30 Kan. App. 2d 814, 815 (2002). As the court noted in *Curts*, however, that exception merely allows for a claim of IIED without a showing of physical injury. Any allegation that the District inflicted emotional distress in a willful or wanton manner is therefore subsumed in Ms. Doe's IIED claim against the District. *See id.*

Ms. Doe has also provided evidence that Mr. Hutchinson snapped her bra strap frequently throughout her first three years of high school, and that such conduct would leave welts on Ms. Doe's back.[7] Those welts would constitute a physical injury, for which Ms. Doe would be able to recover on her negligence claims. If she did suffer such a physical injury, she would then also be permitted to recover damages for emotional harm suffered at the same time. Accordingly, Ms. Doe's recovery on her negligence claims is

_____

[7] As noted above, the Court does not agree with defendants that Ms. Doe's declaration, in which she mentions the welts, should be deemed a sham declaration, as her deposition testimony about the bra-strap-snapping did not preclude the possibility that she suffered a resulting physical injury. Defendants point to Ms. Doe's failure to mention the welts when asked in her deposition about any physical injuries that she suffered because of conduct by Mr. Hutchinson, but she was discussing her emotional distress at that time, and she could reasonably have interpreted the question as relating to that distress. Despite that answer, she testified unequivocally that Mr. Hutchinson routinely snapped her bra strap over a period of three years. Thus, the Court will consider the evidence that she suffered welts. In light of the seeming inconsistency in her answers, however, defendants will be permitted, if they so choose, to reopen Ms. Doe's deposition to inquire solely about physical injuries resulting from Mr. Hutchinson's snapping of her bra strap, as well as emotional harm that accompanied or was caused by those physical injuries.

limited to damages for the injuries directly resulting from incidents of bra-strap-snapping by Mr. Hutchinson, and the District's motion is granted to that extent.

b.      The District also seeks summary judgment on the negligence claims on the basis that the underlying conduct by Mr. Hutchinson was not foreseeable. The Court concludes that this issue may not be decided in the District's favor as a matter of law. Ms. Doe has submitted evidence that school administrators had notice of inappropriate conduct by Mr. Hutchinson, and the particular conduct at issue (snapping of bra straps) allegedly occurred on a regular basis, to Ms. Doe and other girls, in classrooms and in hallways. Thus, a reasonable jury could conclude that the District was negligent in failing to stop or prevent the conduct.

c.      The District argues that it is protected from liability on these claims by the KTCA's discretionary function immunity, which applies to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee." *See* K.S.A. § 75-6104(e). The District argues that any decisions concerning how to supervise Mr. Hutchinson or Ms. Doe, including disciplining or terminating Mr. Hutchinson, were discretionary. In response, Ms. Doe argues that the immunity does not apply because of the existence of a mandatory duty in this case. *See Nero v. Kansas State Univ.*, 253 Kan. 567, 585 (1993) ("If there is a clearly defined mandatory duty or guideline, the discretionary function exception is not applicable."). In particular, Ms. Doe cites the District's official policy prohibiting sexual harassment and requiring corrective action by the District. The District bears the burden to establish that it is entitled to this immunity. *See id.*

The Court concludes that the District has not met that burden at this stage. The District argues, without citation to authority, that even if it had a legal duty pursuant to the policy, it would exercise discretion in carrying out that policy. The Kansas Supreme Court has held, however, that "the negligent performance of a ministerial act [a duty imposed by law] is not within the discretionary function exception, even if the decision to perform the act is." *See Schmidt v. HTG, Inc.*, 265 Kan. 372, 392 (1998) (citing *Allen v. Kansas Dept. of S.R.S.*, 240 Kan. 620 (1987)). "The more a judgment involves the making of policy the more it is of a 'nature and quality' to be recognized as inappropriate for judicial review." *See Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 365 (1991). In addition, the degree to which the government actor must employ expertise is relevant to the determination of whether an act is ministerial or discretionary. *See Thomas v. County Comm'rs of Shawnee County*, 293 Kan. 208, 234-35 (2011). Ms. Doe's negligence claims are now limited to the District's alleged negligence in failing to prevent Mr. Hutchinson's bra-strap-snapping conduct. Prevention of that conduct would not ordinarily require a great deal of educational or hiring expertise, nor would such prevention rise to the level of policymaking that the legislature would wish to shield from liability. Accordingly, the Court rejects the District's invocation of discretionary function immunity for the negligence alleged in this case.

d.      Finally, the Court rejects the District's arguments based on the legislative function and executive function exceptions in the KTCA, as Ms. Doe is not asserting a claim based either on the adoption or failure to adopt a regulation or ordinance, or on the enforcement or failure to enforce a regulation or ordinance. *See* K.S.A. § 75-6104(a), (c).

Nor would the exception contained in K.S.A. § 75-6104(d) require judgment for the District, as Ms. Doe has not relied solely on any policy in seeking to impose a duty of care on the District. *See id.*[8]

> D. *Medical Expenses*

The District seeks summary judgment on any claim by Ms. Doe for damages for past or future medical expenses. For the same reasons set forth above in ruling on Mr. Hutchinson's motion, the District is awarded summary judgment on any such damage claim.


**IV.     Defendant District's Motion for Summary Judgment – Harrison Claim**

Plaintiff Harrison, Ms. Doe's mother, asserts a single claim against the District under Title IX for retaliation. As set forth in the pretrial order, Ms. Harrison alleges that "she suffered a materially adverse action when School District employees excluded her from school activities, made false statements and interfered with the investigation [into her complaints of harassment]." By separate motion, the District seeks summary judgment on that claim, and the Court agrees that summary judgment is appropriate in this case.

1.     In alleging that she suffered retaliation by exclusion from school activities, Ms. Harrison asserts that she was denied the opportunity to serve as a line judge at Ms.

---

[8] The District argues without citation to authority that Ms. Doe's invocation of the mandatory duty restriction on the discretionary function immunity necessarily means that these other exceptions must apply. The Court disagrees, as such an interpretation would render meaningless the mandatory duty restriction recognized by the Kansas Supreme Court.

Doe's volleyball games. She testified that she complained to the superintendent and the volleyball coach that Mr. Hutchinson had served as a line judge in order to make Ms. Doe uncomfortable, that she was willing to serve as a line judge instead, but that that was not the answer that the coach wanted to hear. She did not testify that she had previously requested to serve and was denied the opportunity, or that she was denied the opportunity to serve as a line judge on any particular occasion after her complaint. There is no evidence that she complained because she wanted to serve as a line judge; rather, she complained because she did not want Mr. Hutchinson to serve. Thus, no reasonable jury could conclude that she was denied a benefit and thus had a materially adverse action taken against her, such that she would have been dissuaded from making or supporting her charges of harassment by Mr. Hutchinson.[9]

Ms. Harrison also asserts that she was not invited by the coach to a preseason parents meeting. Any such exclusion cannot support a claim of Title IX retaliation, however, because Ms. Harrison has not submitted any evidence that the District or an administrator had actual notice of this alleged act of retaliation by the coach. Moreover, it is undisputed that attendance at the meeting by parents was not mandatory, and Ms. Harrison conceded that she was able to participate fully as a parent during the season. Thus, any such exclusion from the meeting does not rise to the level of a materially-adverse action taken against her.

---

[9] Mr. Hutchinson's conduct is serving as a line judge to intimidate Ms. Doe would be an action against Ms. Doe, not Ms. Harrison; Ms. Harrison alleges that she suffered retaliation because she was denied the opportunity of serving as a judge.

2.     In support of her allegation of false statements about her, Ms. Harrison cites only comments made to Ms. Doe by the school counselor in a meeting also involving the volleyball coach and Mr. Hutchinson's daughter.  Ms. Harrison submitted evidence of the following statements by the counselor:  Ms. Harrison was acting as a "helicopter" mom or a "snowplow" mom, meaning that she was overly involved in Ms. Doe's affairs; Ms. Harrison was handling the harassment by Mr. Hutchinson "wrong"; Ms. Harrison was blowing things out of proportion; she should stop calling people; she has filed many lawsuits; she is not looking out for Ms. Doe.[10]

As noted above in the discussion of Ms. Doe's retaliation claim, Ms. Harrison complained that the counselor met with Ms. Doe without a parent present, but there is no evidence that she complained to an appropriate person about specific statements that were made in that meeting about her.  Thus, there is no evidence that the District had actual notice of the allegedly retaliatory conduct by the counselor towards Ms. Harrison, as required to support this claim.  In addition, Ms. Harrison's claim rests almost entirely on statements of opinion concerning the manner in which Ms. Harrison was pursuing her complaints, and not on demonstrably-false statements of fact,[11] and the Court concludes that such opinions rendered by the counselor would not dissuade a reasonable person from making or supporting the harassment charges against Mr. Hutchinson.

---

[10] The District did not object to any of this evidence as hearsay.

[11] Ms. Harrison alleges that the counselor falsely stated that she had filed many lawsuits, but she has not cited any evidence to show that that statement was false.

3.      In support of her allegation that the District retaliated by interfering with the investigation into her complaints about harassment by Mr. Hutchinson, Ms. Harrison asserts that the principal told parents that they should participate in the investigation because Ms. Harrison was making things up about the school. Ms. Harrison's evidence in support of that allegation is her testimony that one parent told her that the principal made such a statement to him. The statement by the other parent (which she denies in a declaration) is hearsay, however, as it is offered for the truth of the matter asserted (that the principal did make such a statement). Ms. Harrison has not submitted any other evidence that the principal made the alleged statement. Accordingly, this alleged conduct cannot serve as the basis for a retaliation claim, and the District is entitled to summary judgment on this claim in its entirety.

## V.      <u>Motion to Determine Place of Trial</u>

When plaintiffs filed this action, they designated Kansas City as the place of trial. In accordance with local rule, the Court is not bound by that request and may determine the place of trial upon motion or in its discretion. *See* D. Kan. Rule 40.2(e). Defendants have now moved for a designation of Topeka as the place of trial for this case.

This Court has previously set forth the governing standards as follows:

In considering a motion for intra-district transfer, the courts of this district generally look to the same factors relevant to motions for change in venue under 28 U.S.C. § 1404(a).

. . . This statute grants a district court broad discretion in deciding a motion to transfer based on a case-by-case review of convenience and fairness. The court considers the following factors in determining whether

> to transfer the case: (1) plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other practical considerations that make a trial easy, expeditious and economical.
>
> The party seeking to transfer the case has the burden of proving that the existing forum is inconvenient. Generally, unless the balance weighs strongly in favor of transfer, the plaintiff's choice of forum is not disturbed. However, because that rule turns on the assumption that the plaintiff resides in the chosen forum, it is largely inapplicable if, as here, the plaintiff does not reside there.

*See Twigg v. Hawker Beechcraft Corp.*, 2009 WL 1044942, at *1-2 (D. Kan. Apr. 20, 2009) (Lungstrum, J.) (citations and footnote omitted), *quoted in Lopez-Aguirre v. Board of County Comm'rs of Shawnee Co., Kan.*, 2014 WL 853748, at *1 (D. Kan. Mar. 5, 2014) (Lungstrum, J.).[12] The parties agree that the third and fourth factors listed above do not apply in this case.

As noted above, the first factor, the plaintiff's choice of forum, is not entitled to significant weight where, as here, the plaintiffs do not reside in the forum.[13] *See Twigg*, 2009 WL 1044942, at *2 ("When the plaintiff does not reside in the chosen forum, the rationale for allowing the plaintiff to dictate the forum evaporates.") (citations omitted). That is especially true in this case, which arises from events in Smith Center, in Smith

---

[12] As the Court has noted previously, references in past opinions from this district to "transfer" within the district are technically incorrect, as this district court is not divided into divisions and the electronic case files do not exist only in a single location; nevertheless, the substantive analysis remains the same, and prior cases therefore remain persuasive. *See Lopez-Aguirre*, 2014 WL 853748, at *1.

[13] Plaintiffs reside in Concordia and Westmoreland respectively, both of which are situated west of (and therefore closer to) Topeka.

County, well outside the Kansas City area and closer to Topeka (by approximately 60 miles), and which therefore has no connection to the chosen forum. *See id.*

With respect to a motion such as this one, "the relative convenience of the forum is a primary, if not the most important, factor to consider." *See id.* In this case, plaintiffs' choice of Kansas City as the place of trial is overcome by the relative convenience for most of the witnesses of trying the case for a week or longer in Topeka. Plaintiffs do not dispute that the great majority of witnesses will be traveling from the Smith Center area, and reducing the travel distance for such witnesses by approximately 120 miles will allow them more easily to travel to and from the trial in a single day. Plaintiffs note that a couple of potential witnesses reside in the Kansas City area, but plaintiffs have not identified those witnesses or indicated the likelihood that they will in fact testify live. Plaintiffs also note that the attorneys reside in the Kansas City area and that an expert will be flying into the area, but the Court is not as concerned about the convenience of persons who are compensated for their attendance. *See Lopez-Aguirre*, 2014 WL 853748, at *2.

In summary, Topeka is significantly more convenient for nearly all of the witnesses in this case, and no other considerations outweigh that primary consideration. Accordingly, the Court grants the motion to designate Topeka as the place of trial.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant Brock Hutchinson's motion for summary judgment (Doc. # 200) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiff Jane Doe's claims for invasion of privacy, other than a claim for intrusion upon seclusion based on bra-strap-

snapping; and with respect to her claim for medical expenses, and defendant Hutchinson is awarded judgment on those claims. The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT the motion by defendant USD No. 237 for summary judgment on the claims asserted by plaintiff Jane Doe (Doc. # 202) is hereby **granted in part and denied in part**. The motion is granted with respect to Ms. Doe's claims for Title IX retaliation; her claims for invasion of privacy, other than a claim for intrusion upon seclusion based on bra-strap-snapping; her negligence claims, other than a claim for injuries directly resulting from the snapping of her bra strap; and her claim for medical expenses, and this defendant is awarded judgment on those claims. The motion is otherwise denied.

IT IS FURTHER ORDERED THAT the motion by defendant USD No. 237 for summary judgment on the claim asserted by plaintiff Angela Harrison (Doc. # 195) is hereby **granted**, and defendant USD No. 237 is awarded judgment on that claim.

IT IS FURTHER ORDERED THAT defendants' motion to strike certain declarations (Doc. # 223) is hereby **denied**.

IT IS FURTHER ORDERED THAT defendants' motion to determine the place of trial (Doc. # 193) is hereby **granted**, and the Court designates Topeka as the place of the trial of this matter.

IT IS SO ORDERED.

Dated this 29th day of October, 2019, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge